## MORSE VS. RYAN.

AGENCY: *After ratifying contract made by B., as his agent, A. cannot repudiate B.'s representations.*
CONTRACT: *Against public policy.*

Where one has accepted the benefit of a contract made in his name by persons professing to act as his agents, he cannot object to evidence of fraudulent representations made by them in procuring the same, on the ground that they were not his agents, or that the representations were not authorized by him.
[M. agreed to employ R. as clerk in the office of receiver of public moneys, as long as M. should hold said office, and to pay R., in consideration of his services as such clerk, all the net receipts from salary and perquisites belonging to said office, except a specified sum. This contract was executed in pursuance of an arrangement by which R., or persons acting for him, undertook to procure and did procure the appointment of M. to said office in consideration of his promising to enter into said contract. DIXON, C. J., is of opinion that the contract is void, as against public policy.]

APPEAL from the Circuit Court for *Winnebago* County.

*Francis A. Ryan* brought his action in said circuit court, against *Morse*, alleging that said *Morse*, about the 25th of April, 1867, received the appointment of receiver of public moneys in the United States land office, at Menasha, in this state, and afterwards qualified and entered upon the duties of said office; that *Morse* was inexperienced and entirely unqualified to perform the duties of the office, and plaintiff was well informed and experienced therein; that accordingly he and said *Morse*, about the 20th of May, 1867,

entered into a written agreement, whereby he (said *Ryan*) agreed that he would faithfully and diligently perform the duties of clerk of said *Morse*, and give him such instructions and information from time to time as said defendant should desire, and as might be reasonable in said office, during the time *Morse* should hold the same; that he (*Ryan*) agreed to pay all office rent and contingent expenses connected with said office of receiver, during the term aforesaid; that in consideration of the service so to be performed, etc., *Morse* agreed to pay plaintiff the full salary and fees and perquisites of said office of receiver, less the sum of six hundred dollars per annum, in equal quarterly payments, etc.; that it was further provided in said instrument that said agreement might be terminated at the expiration of one year from the date thereof, or at any subsequent time, by the mutual agreement of the parties; that for the performance of their covenants in said instrument, the parties bound themselves to each other in the penal sum of $1,000; that pursuant to this agreement, said *Ryan* entered upon the discharge of his duties as clerk as aforesaid, and did and performed all things, etc., etc., until about the 16th of October, 1867, at which time *Morse*, without any cause therefor, or previous notice, discharged *Ryan* from his service as such clerk, and refused to allow him to perform the conditions of said agreement on his part to be performed. The complaint then alleges that there was due said Ryan, at the time of such discharge, according to the terms of the contract, $238; that from that time until the commencement of the action, *Ryan* had been necessarily without any profitable employment, and that he had suffered further damages by reason of *Morse's* violation of the contract, in the sum of $1,000; and it demands judgment in favor of *Ryan* against *Morse* for $1,238 damages, etc.

The defense set up in the answer is, that about the 1st of April, 1867, the office of receiver aforesaid being

virtually vacant by reason of the senate of the United States having refused to confirm the appointment of the plaintiff *Ryan* thereto, said *Ryan*, through one Henry Ryan as his agent, proposed to the defendant *Morse* that he, said *Ryan*, would get said *Morse* appointed such receiver, if *Morse* would equally divide the net receipts of the office with the plaintiff *Ryan*, said *Morse* being a Republican and said Henry Ryan a Democrat, and the plaintiff *Ryan* having influence enough with certain Democrats to procure the appointment of *Morse* to said office; that Henry Ryan then and there represented, and induced *Morse* to believe, that the net salary and perquisites of the office never exceeded $1,300 a year, but were usually from $900 to $1,000 a year; that the plaintiff *Ryan*, and his agent Henry Ryan, at the time such representations were made, knew them to be false, and knew that the net salary and perquisites of said office were from $2,500 to $3,000 a year; and that *Morse*, relying upon these representations of plaintiff's agent, agreed to the proposition, and on the 19th of April agreed to enter into the contract alleged in the complaint, and the same was accordingly drawn up, and executed about the 20th of May; and that *Morse* was appointed to said office, and entered upon its duties, in pursuance of said arrangement. The answer charges, therefore, that the contract averred in the complaint was void, as being against public policy, and because it was procured by fraudulent representations. It further alleges improper conduct on the part of the plaintiff *Ryan*, and negligence or incompetence in the performance of his duties as such clerk, constituting a sufficient justification of his discharge.

On the trial, after the plaintiff's evidence was in, *Morse* testified, in his own behalf, that he never saw the plaintiff *Ryan* until he (witness) received his appointment; that about the 10th of May, 1867, he went to Menasha and talked with said *Ryan* about the office,

and as to when he (*Morse*) should enter upon its duties; that he then told *Ryan* of the representations which his brother Henry Ryan had made; that plaintiff wanted to know if he (*Morse*) had signed that contract, and witness told him he had not; that *Ryan* wished witness to wait until the 13th of May before taking possession, so that he (*Ryan*) could make out his reports, and accordingly witness did not enter upon the office until May 13; that the contract was not signed by him until May 20; that Henry Ryan, one Robinson and the plaintiff were present when it was signed; but that the contract was drawn before witness's appointment. The defense then offered to show by the witness, 1. That his appointment as receiver was procured by Henry Ryan and said Robinson, under an arrangement between *Morse* and them that the plaintiff *Ryan* should be received in *Morse's* office as clerk, and should have all the salary and perquisites except $600; that in pursuance of such agreement, said Robinson and Henry Ryan procured defendant's appointment. 3. That *Morse* was induced to enter into the agreement by false and fraudulent representations, such as are alleged in the answer. The evidence was objected to on the ground that there was no evidence that what was done by said Robinson and Henry Ryan, was done by authority from the plaintiff; and the objection was sustained. The evidence on the other issues need not be stated.

The court instructed the jury, *inter alia*, that the contract was valid on its face, and there was no evidence before them to impeach it. Verdict for the plaintiff *Ryan;* new trial denied; and judgment upon the verdict; to reverse which, *Morse* brings his writ of error.

*Gabe Bouck*, for plaintiff in error:

1. A principal cannot enjoy the benefits of a bargain made by his agent, without adopting the instrumentalities by which he consummated it. *Crans v. Hunter*,

28 N. Y. 389; *Elwell v. Chamberlain*, 31 id. 611. 2. The extent and character of the agency, the authority to act, and subsequent ratification, are questions for the jury. *McDonnel v. Dodge*, 10 Wis. 106; *Savage v. Davis*, 18 id. 608. 3. If Robinson and Henry Ryan acted as agents for defendant in error, in making the contract, he is liable for their misrepresentations, even if these were unknown to him, or forbidden by him. Story on Agency, §§ 135–139, 452; Paley's Agency, 255; *Sandford v. Handy*, 23 Wend. 259; *Bank of U. S. v. Davis*, 2 Hill, 451; *Carpenter v. Am. Ins. Co.*, 1 Story's R. 62; *Bennett v. Judson*, 21 N. Y. 238. 4. The contract was void as against public policy. *Tappan v. Brown*, 9 Wend. 175; *Hook v. Gray*, 6 Barb. 398; *S. C.*, 4 Coms. 449; *Devlin v. Brady*, 36 N. Y. 531.

*Warner & Ryan*, for defendant in error:

1. In the absence of fraud, the written contract itself is the highest and best evidence of its contents and effect, and parol proof cannot be given to explain, change or contradict it. *Campbell v. Moore*, 3 Wis. 767; *Heath v. Van. Cott*, 9 Wis. 516; 1 Greenl. Ev. §§ 86–88. 2. The fraud by which the contract may be invalidated is only the fraud of the defendant in error himself, not that of third persons; and there is no proof of any such fraud on his part. 3. Even if *Morse* was induced to enter into the contract by fraud, still, by acting under the same for five months, he affirmed the contract, and is estopped from setting up the fraud. *Bronson v. Wiman*, 8 N. Y. 182. 4. The contract is valid. All the fees legally belong to *Morse*, and he had a right to stipulate what his clerk should receive. If *Ryan* had agreed to *pay Morse* a sum certain, it would have been otherwise. *Mott v. Robbins*, 1 Hill, 21; *Becker v. Ten Eyck*, 6 Paige, 68; *DeForest v. Brainerd*, 2 Day, 528; *Hall v. Gavitt*, 18 Ind. 390; *Grant v. McLester*, 8 Ga. 553.

Dixon, C. J. This is a very plain case. The judgment must be reversed for error in excluding the evidence offered by the defendant below tŏ prove the false and fraudulent representations made by the agents of the plaintiff below, in procuring the contract from the defendant as set· forth in the answer. It is argued that the evidence was properly excluded, on the ground that no proof had been given of the agency, or that Robinson and Henry Ryan, the alleged agents, were authorized to act for the plaintiff in negotiating for and procuring the contract to be made by the defendant, and consequently, that their representations made to the defendant, and upon which he was induced to enter into and execute the contract, were inadmissible against the plaintiff. The answer to this position is obvious. It was already in evidence that the plaintiff had accepted the contract. It was in writing, and the plaintiff had signed it. He had acted under and claimed the benefit of it, and was then claiming such benefit. The suit was brought upon it, to recover damages for alleged breaches on the part of the defendant. All this appeared from the pleadings and the admissions contained in them. It was also already in evidence that the negotiation or arrangement which preceded the contract, and which led to its consummation, was between the defendant and Robinson and Henry Ryan. The defendant, who was the witness, had testified to this, and that Robinson acted for the plaintiff, and that the business was done through Robinson and Henry Ryan. Why then were not the statements and representations of Robinson and Henry Ryan admissible? The idea seems to have been, because there was no proof of previous authority from the plaintiff to them to make the statements and representations. This was a clear mistake. The plaintiff having ratified and affirmed the contract, he also ratified and affirmed the means by which it was obtained; and such ratification was equivalent to

previous authority given by him. The doctrine of the law is well settled, that a principal cannot accept and enjoy the benefits of a bargain made by his agent, without at the same time adopting the instrumentalities by which the agent consummated it. *Elwell v. Chamberlain*, 3 N. Y. 611; *Crans v. Hunter*, 28 N. Y. 389. This is a sound and wholesome doctrine, and one which was fully applicable to the case here. " I should be very much shocked," says Lord ST. LEONARDS in *Nat. Exch. Co. v. Drew*, 2 Macqueen (House of Lords) 103, " at the law of England, if I could bring myself to believe it would not reach the case of a person so availing himself of a misrepresentation of his own agent." And it seems to be now conceded in England that the knowledge of the agent is the knowledge of the principal, without regard to the manner of acquiring it, or the fact of its being communicated to the principal. *Dresser v. Norwood*, in Exchequer Chamber, 17 C. B., N. S., 466 [112 E. C. L. 466, 480]. And the same doctrine is held in *Hart v. The Bank*, 33 Vt. 252. The court below should have received the evidence offered of the statements and representations, which were the same as if they had been made by the plaintiff himself.

Upon the other question presented, the court expresses no opinion. I am inclined to think, however, upon the facts as stated in the answer and proofs offered by the defendant, that the contract is void. It seems to me to be illegal, corrupt, and contrary to the principles of public policy, and just such a contract as no court should sit in judgment upon, except to pronounce it void, and to dismiss any action brought to enforce it.

*By the Court.*—The judgment of the circuit court is reversed, and a *venire de novo* awarded.