JOHNSON, Appellant, vs. ASSOCIATED SEED GROWERS, INC., Respondent.

*March 11—April 7, 1942.*

For the appellant there was a brief by *Twesme & Twesme* of Galesville, and oral argument by *A. T. Twesme*.

*Burr Tarrant* of Whitehall, for the respondent.

FRITZ, J.   John P. Johnson, a farmer, seeks to recover $229.81 from the defendant, Associated Seed Growers, Inc., for peas delivered by him at the plant of Blair Canning Company (hereinafter called the "Canning Company") in July, 1937.   Upon the trial plaintiff introduced proof to the following effect.   Prior to April, 1937, he and forty-eight other pea growers had made written contracts with the Canning Company, under which it sold pea seed to them for which they agreed to pay and raise a crop of peas to be sold and delivered to the Canning Company at an agreed price.   It was

then indebted for the seed to the defendant and, on April 27, 1937, the two corporations entered into a contract by which the defendant agreed to advance the funds necessary for the pay roll and expenses to be incurred in operating the plant in canning the peas; and as security therefor, and also the $18,909.33 owing to defendant by the Canning Company for seed peas, the latter assigned to defendant the written contracts made with the farmers and the accounts owing by them for the seed peas, and also agreed to deliver to defendant as security negotiable warehouse receipts, which were to be issued for the peas when canned. In the contract there was a provision that if the $18,909.33 were not paid by July 15, 1937,—

"the assignee shall have, and is hereby given, full power and authority to proceed at any time thereafter, in its sole discretion and for its own use, and benefit, to perform any or all of said contracts in the place instead of the assignor, and to fulfil the obligations imposed upon, and to receive the benefit inuring to the assignor under said contract. . . ."

The contract and the arrangements for financing the operation of the plant were made on behalf of defendant by its vice-president, Frank T. Woodruff, who, together with a Mr. Richardson, its field representative for Wisconsin, participated in negotiations therefor at a meeting at Blair between them and the officers of the Canning Company, at which there was also present Joseph J. Ouradnik, who had been in the employ of the Canning Company as manager of its canning operations. When, at an early stage of the trial,—before Woodruff had been called as a witness and testified that he had participated in that meeting and the making of the contract,—plaintiff's counsel offered testimony from a deposition by Ouradnik that at the meeting at which the contract was signed the situation with the farmers was talked over, and he was instructed by Woodruff and Richardson to tell the farmers that defendant would pay for the peas, the court sustained defendant's objec-

tions to most of the testimony to that effect. Thereupon plaintiff's counsel called Woodruff as an adverse witness and he testified as to his participation in the meeting and making of the contract and arrangement for financing the operation of the plant in the processing of the peas. He also testified that defendant had no one else at Blair until July, 1937, when it sent Robert Somers as its representative, whose job was "to furnish the Blair Canning Company with funds as they might requisition them for canning and obtain warehouse receipts for the canned products;" that defendant "received all of the proceeds from the sale of the pack in 1937;" and that "after the peas were delivered and put in cans" and covered by warehouse receipts, the defendant returned the assignment and contracts to the Canning Company, because it had the collateral security to cover the funds it had advanced. After the admission of that testimony, the court permitted plaintiff to introduce testimony by Ouradnik to the following effect. At the meeting, after the contract was signed, Woodruff and Richardson instructed Ouradnik to tell the farmers that they should not be afraid that they would not be paid for the peas, and that defendant was buying their peas and they would be paid by defendant; that subsequently some of the farmers, including plaintiff, came to the office and wanted to know, before they delivered, by whom they were going to be paid for their peas, and Ouradnik told them that defendant would pay them for the peas at the contract price, and Robert Somers also told Johnson not to be afraid; that defendant was paying for all peas delivered; and that on this information the farmers delivered their peas. Ouradnik also testified that Somers acted as intermediary in taking the notes of the Canning Company, and delivering a part of the pay roll to it; that he was custodian for the defendant, taking care of the ordering and finance, and that besides the duty of looking after the finance, Somers went out in the field with Ouradnik and talked to the farmers, who had previously contracted to deliver peas to the

Canning Company, including Mr. Johnson, and told them the defendant was buying the peas; and that after July 30th, Ouradnik was acting as the local manager for the defendant and was paid a salary and received some checks for salary directly from the defendant's office at New Haven, Connecticut. The plaintiff, Johnson, also testified that before delivering his peas in 1937 he had a conversation with Somers at Blair, and talked with Ouradnik, and they guaranteed to him that he was safe; that Somers said the defendant was buying the peas; and that after that conversation he delivered the peas.

When plaintiff rested, the court granted defendant's motion for a nonsuit on the grounds that the defendant in no way made a contract with the plaintiff; that Ouradnik was not working for defendant and neither he nor Somers had authority, under the contract between the defendant and the Canning Company, to represent anything on behalf of defendant; and that if they did make any such representation it was not within the scope of his authority. Pursuant to the order granting the nonsuit, judgment was entered dismissing the complaint and plaintiff appealed. Although there was no proof as to express authority on the part of Woodruff to act on behalf of defendant, it does appear by competent proof that the contract, which he made with the Canning Company on behalf of defendant, was acquiesced in and performed by the defendant, and it was benefited thereunder by accepting the warehouse receipts and all of the proceeds for the peas. Consequently, Woodruff can be deemed to have possessed the necessary authority to negotiate and make the contract on behalf of defendant, and in this respect there clearly existed between it and Woodruff the status of principal and agent. Because of the existence of that status, there is applicable to the defendant and Woodruff the general rule that the principal is chargeable with and bound and affected by such knowledge

and notice as his agent received in relation to the matter over which the authority extended while acting within the scope of his authority in negotiating or attending to a particular transaction. 2 Am. Jur. p. 286, § 368; *Brothers v. Bank of Kaukauna,* 84 Wis. 381, 395, 54 N. W. 786; *Venne v. Damrow Bros. Co.* 192 Wis. 249, 254, 212 N. W. 796. The obtaining of the peas for canning at the plant from the growers, who would not deliver them until informed as to by whom they would be paid, was clearly a necessary step in order to secure canned peas and the warehouse receipts, and finally the proceeds for the canned peas, which it was defendant's ultimate purpose to obtain as security under the contract made on its behalf by Woodruff. Without obtaining the peas from the growers by reason of Ouradnik's informing them pursuant to Woodruff's instructions that they would be paid by defendant, the contract would have served no purpose and been of no value to defendant. Consequently Woodruff's act in so instructing Ouradnik, as well as his receiving of the information as to the necessity of having some one like Ouradnik contact the growers to induce them to deliver the peas by making it clear to them that they would be paid by defendant,—all of which was in reference to matters directly related to the contract negotiated by Woodruff and in furtherance of defendant's purposes thereunder and necessary in order to obtain the benefits which it accepted,—can be deemed to have been within the scope of Woodruff's authority as defendant's agent in attending to that transaction. As the court said in *Voell v. Klein,* 184 Wis. 620, 623, 200 N. W. 364,—

"The creation of an agency carries with it the usual and appropriate means of accomplishing its object and clothes the agent with such authority as is proper and necessary to effectuate its purposes."

Under the circumstances defendant cannot retain, on the one hand, the avails of the contract made by Woodruff and his

instructions that defendant would pay for the peas, which he found it necessary to give when he learned, while acting within the scope of his authority, that the farmers would have to be told by whom they were to be paid; and, on the other hand, repudiate the responsibility and obligation incurred by reason thereof on the ground that Woodruff's representations and instructions to Ouradnik had not been expressly authorized by the defendant. *Morse v. Ryan,* 26 Wis. 356; *McDermott v. Jackson,* 97 Wis. 64, 72 N. W. 375; *Glassner v. Johnston,* 133 Wis. 485, 113 N. W. 977; *Gnat v. Westchester F. Ins. Co.* 167 Wis. 274, 167 N. W. 250. It follows that the court erred in ordering the nonsuit.

As the judgment under review must be reversed on that ground, there is no need to discuss the proceedings involved under the error assigned by plaintiff in respect to rulings by which the court excluded some testimony in Ouradnik's deposition that was offered to prove his agency and the scope of his authority. On this point, it suffices to note, in the event of another trial, that although the declarations of an agent made to third persons, who are called to prove them, are, in general, no evidence of the existence of an agency, the authority of an agent, when not in writing or so required to be, may be proven by testimony given on the trial by the agent himself. *Somers v. Germania Nat. Bank,* 152 Wis. 210, 138 N. W. 713; *Stevens v. Montfort State Bank,* 183 Wis. 621, 198 N. W. 600; *Smith v. State,* 149 Wis. 63, 134 N. W. 1123.

*By the Court.*—Judgment reversed, and cause remanded with directions to order a new trial.