SID GRINKER COMPANY, INC., Respondent, v. CRAIGHEAD and wife, Appellants.

*November 2—November 29, 1966.*

For the appellants there was a brief by *Schwemer & Schwemer* of Milwaukee, and oral argument by *Paul E. Schwemer*.

For the respondent there was a brief by *Hersh, Magidson & Lensky* of Milwaukee, and oral argument by *Harry Lensky*.

HEFFERNAN, J. The foreclosure of a mechanic's or contractor's lien is an equitable proceeding. *Delap v. Parcell* (1939), 230 Wis. 152, 158, 283 N. W. 305; *Gumz v. Chickering* (1963), 19 Wis. (2d) 625, 636, 121 N. W. (2d) 279. As such, it is triable to the court without a jury. *In re Acme Brass & Metal Works* (1937), 225 Wis. 74, 78, 272 N. W. 356; *Harrigan v. Gilchrist* (1904), 121 Wis. 127, 282, 99 N. W. 909. However, a court may properly order a jury impaneled to try any issue of fact. *Huse v. Washburn* (1884), 59 Wis. 414, 416, 18 N. W. 341. In that event, the verdict is advisory only, and the court may properly refuse to accept the findings of the jury and make its own findings. *In re Acme Brass & Metal Works, supra,* page 78; *Gavahan v. Shorewood* (1930), 200 Wis. 429, 431, 228 N. W. 497. Since the court is the ultimate fact-finder in this action, it follows that, on review, the findings should not be set aside unless they are contrary to the great weight and clear preponderance of the evidence. *Kirchen v. Gottschalk* (1965), 26 Wis. (2d) 123, 126, 131 N. W. (2d) 885. And the evidence must be reviewed from the standpoint most favorable to the respondent. *Guinther v. Schucht* (1965), 26 Wis. (2d) 97, 99, 131 N. W. (2d) 861.

Applying these tests, we conclude that the findings of the trial judge must be affirmed.

The specifications required that a skim coat be applied to the walls in certain of the rooms. It is the owners'

claim that this work was improperly done, and that this not only necessitated the redoing of the job, at the cost of $656, but also entailed the expenditure of $453.50 for redecoration and electrical work when the allegedly defective work was removed. The court held that the skim coating was properly done. While there was testimony to the effect that the skim coating was inferior to the usual plaster wall, nevertheless, Grinker testified that the skim coating was done "to the best of our ability" and in accordance with the specifications of the contract. The defendants had some of the work redone, yet they testified that the process of doing the work over was "similar." The defendants did produce a plastering contractor, who testified that the job had been done "improperly." However, taking his testimony as a whole, it is apparent that he believed that the only proper way to do the job was to plaster over wire mesh. That, however, was not the process that the Craigheads had contracted for. All that the Craigheads really proved was that they contracted for a process that was inferior to the traditional type of plastering, and that consequently they got an inferior result. While there was evidence that could have led to a contrary conclusion, it is apparent that the court's findings that the skim coating was not improperly done was not contrary to the great weight and clear preponderance of the evidence.

It is true that the plaintiff at trial admitted that the skim coating was to some degree defective; however, the trial judge chose to believe not the defendants, but the plaintiff, as to the extent of the defect.

In view of the fact that the trial judge's finding that the skim coating was not improper must be sustained, the defendants' claim for replastering, rewiring, and redecorating are unsupportable and need not be considered on this appeal. Nor, in view of the finding that the skim coating was not improper, can there be any weight given to defendants' argument that they were

entitled to damages for the loss of rental income as the result of redoing the skim coating and redecorating.

The trial judge found that installation of anodized aluminum trim on the front of the building was improper and concluded that the defendants were damaged in the amount of $150. While the work done was admittedly defective to some degree, there was a dispute in regard to the quality of the aluminum. Grinker stated it was proper but merely needed washing. The defendants called a sheet-metal worker as an expert witness. He testified that the aluminum had not been properly anodized. However, this witness was admittedly not a metallurgist. His expertise extended only to the methods of properly installing sheet-metal trim. While there was a conflict in regard to the quality of the aluminum, the court's apparent conclusion that the aluminum itself was not defective is not contrary to the great weight and clear preponderance of the evidence.

While the only direct evidence of cost was that submitted by the defendants' expert, that figure included all new replacement materials, and did not include the probability suggested by the evidence that the old materials could be reused. The trial judge's finding in this respect must be upheld.

The defendants also claimed damages for defective aluminum trim work that allegedly caused water to seep into an area adjacent to the plate-glass window. One witness testified that the water "could have" collected at that spot and that the expansion of the water could have caused the glass to crack. An "expert" employed by a glass company said, "I wouldn't want to be the guy to say: Well, I know just exactly why it cracked." It would have been mere speculation for the judge to conclude that the plate glass was damaged by plaintiff's defective workmanship. He properly rejected the defendants' assertion.

While the evidence is clear that the front-door repairs were not made in accordance with the contract specifications or in a workmanlike manner, it is equally clear that the defendants are not entitled to $623.90 as claimed. That figure represented the cost for redoing the doors in a manner superior to that contemplated in the contract (*e.g.*, the defendants' alternative called for two mail slots and oak flush floors; the contract provided for none of these). Furthermore, the figure asserted by the defendants did not contemplate any mitigation of damages that clearly could be accomplished by salvaging a portion of the work that was done under the contract. In addition, the defendants are claiming damage based on "extras" that were not contemplated by the contract. On the basis of the evidence, the trial court's finding is not contrary to the great weight and clear preponderance of the evidence.

We also conclude that the trial court applied the proper standards in determining damages. McCormick, Damages (hornbook series), p. 647, sec. 168, points out that, where, as here, there arises a dispute between owner and builder, the "damages awarded to the owner for defective construction by the builder are measured (a) If the defect is remediable without undue loss or expense, by the cost of repair or replacement; . . ." McCormick points out, at page 649, that, ". . . the owner must deduct from the amount of loss thus ascertained the amount, if any, remaining unpaid upon the contract price." In *Sherry v. Madler* (1905), 123 Wis. 621, 627, 101 N. W. 1095, we determined, ". . . in case of a defect which may be easily remedied without taking down and reconstructing a substantial portion of the building this allowance should equal the reasonable expense of supplying or correcting the defect." See also *J. G. Jansen, Inc., v. Rilling* (1931), 203 Wis. 193, 232 N. W. 887; *Burmeister v. Wolfgram* (1921), 175 Wis. 506, 185 N. W. 517; *Buchholz v. Rosenberg* (1916), 163 Wis. 312, 156

N. W. 946; and *Ashland Lime, Salt & Cement Co. v. Shores* (1899), 105 Wis. 122, 81 N. W. 136. It appears that this standard of damages is properly applied here. The contract amount of $1,200 was not in dispute, but the extent to which defendants would have to be compensated to put them in the position they would have been had the contract been performed in toto was disputed. Upon the basis of all the evidence, the court properly concluded that additional expenditures of $365 would be necessary to make good the defendants' bargain. While we agree with the court's method of computing damages, a perusal of the record supports the plaintiff's contention that the total award should have been $700. Plaintiff points out that, during the course of trial, he conceded that $135 credit should be allowed defendants for defective plaster work. Taking that credit into consideration, the plaintiff's judgment should be computed by subtracting that credit and the $365 awarded for defective work from $1,200, leaving a judgment for the plaintiff in the sum of $700. The trial judge's figure of $470 was apparently the result of subtracting the $365 figure from the contract total and again deducting it as damages. This was error, and the judgment must be modified accordingly.

*By the Court.*—The judgment is modified to increase the judgment to $700 and, as modified, is affirmed.

HANLEY, J., took no part.