MARTINSON, Executrix, Appellant, v. BROOKS EQUIPMENT LEASING, INC., Respondent.*

*September 7—October 3, 1967.*

* Motion for rehearing denied, without costs, on November 28, 1967.

210

For the appellant there were briefs and oral argument by *Vernon Molbreak* of Madison.

For the respondent there was a brief by *Roberts, Boardman, Suhr & Curry,* attorneys, and *Thomas G. Ragatz* and *Gerald T. Conklin* of counsel, all of Madison, and oral argument by *Mr. Ragatz* and *Mr. Conklin.*

BEILFUSS, J. The issues on appeal are two:

1. Were the claimed "extras" included within the April 15th contract?

2. Was the imposition of $2,000 in liquidated damages unjustified?

It appears that at the time the contract was signed, April 15, 1965, the plans and specifications actually used to build the pool were not in existence. The only plans and specifications existing were those which accompanied the bid materials sent to interested contractors. These plans and specifications prepared by respondent's engineer, William Dries, called for an all metal pool with a diatomaceous earth filter system that was to be constructed "deck level." The bid forms, however, included space for an alternative bid on an all concrete pool. Appellant obtained information on such a pool from the National Pool Company and submitted his bid for a concrete pool based on this information.

Before the contract was signed, a representative of National Pool Company showed Mr. Brooks and Mr. Dries a concrete pool with a sand filter system housed in an underground concrete filter house. Brooks decided to construct an identical pool. Neither appellant nor his

employee, Mr. Shaw, were present when this pool was viewed. Both appellant and Shaw met with Dries and the National Pool representative on April 13, 1965. The evidence is in dispute but Dries' notes taken at this meeting show that an underground filter house was discussed.

Two days after this meeting the contract was signed. The contract provided that the pool would be constructed according to "plans to be submitted by National Pool Company." The contract price agreed upon ($27,163) was the amount of the appellant's bid plus an additional $50 for a stairway down to the filter house.

On or about April 15, 1965, appellant requested National Pool to prepare and send plans and specifications for an all concrete pool. These plans, dated April 22, 1965, and showing a sand filter system housed in an underground concrete filter house, were received by the appellant. The plans were returned to National Pool to be revised as to some details, and were again received by appellant about May 8, 1965. At this time construction had either not begun or barely begun. In any event, appellant was aware that there was to be an underground filter house at this time if not before.

Appellant contends the underground filter house was an "extra" and not included in the April 15th contract. Respondent contends that the National Pool plans, though not in existence when the contract was signed, were incorporated by reference and became a part of the contract.

Sec. 2.15 of the specifications, and article 6 of the typewritten portion of the agreement incorporated the "drawings" into the contract. Appellant contends the term "drawings" is ambiguous since in other contract instruments the term "plans" is used. Therefore appellant contends that construing the contract against the party who drafted it, respondent, "plans" are not incorporated.

It is more logical to conclude that the terms "plans" and "drawings" were intended to be used synonymously

throughout the instrument. However, the point need not be pursued since article 6 of the typewritten provision also lists as an incorporated document "Plans to be submitted by National Pool Company." The face of the contract itself leaves no doubt that the National Pool plans were intended to be incorporated.

The National Pool plans were not in existence at the time the contract was signed; however, matters not presently in existence may nevertheless be made a part of a contract by reference.[2] This should not be taken to mean, however, that items such as plans and specifications unagreed upon may be incorporated without some identification in the original contract and some form of adoption by the person sought to be charged with performance.

The contract sufficiently identified the plans as those to be submitted by National Pool.

The facts here wholly support the conclusion that appellant adopted the plans submitted by National Pool. After receipt of the plans appellant began the work, completed the underground filter house, and in fact gave respondent a request for payment and a lien waiver stating it covered, among other things, the filter house excavation and the pouring of the filter house walls. The filter house concrete walls were complete at this time, yet it was not claimed as an "extra" until much later. The contract provided that no extra or change shall be compensable unless authorized by the owner in writing prior to the installation of the extra or change. Admittedly the respondent-owner never gave such written authorization, nor did the appellant make claim for the extra until a considerable period of time after the claimed extra work had been completed. Appellant's conduct in actually installing the pool in accordance with the National Pool plans without apparent objection unequivocally shows he

---

[2] *Kovarik v. Vesely* (1958), 3 Wis. 2d 573, 89 N. W. 2d 279; 4 Williston, Contracts (3d ed.), p. 138, sec. 581; 17A C. J. S., *Contracts*, p. 267, sec. 327 (2).

adopted them as part and parcel of the contract signed on April 15th.

Appellant does contend that his employee-agent, Mr. Shaw, voiced objection to the underground filter house shown in the National Pool plans some time in May of 1965. Shaw testified to this effect and also testified that Mr. Dries responded to the objection by commenting that things would be worked out. Even if such a statement was made, it does not overcome appellant's failure to obtain written authorization or to claim the underground filter house as an extra when he submitted his request for payment.

Furthermore, the evidence shows that Shaw knew the filter house was to be underground at the time the contract was signed. He denied this knowledge at trial, but his adverse examination read into the record reveals his knowledge of the stairway down to the filter house for which he requested an extra $50 before the contract was signed. Shaw's testimony with regard to this stairway is entirely inconsistent with his position that he did not know the filter house was to be underground. Since Shaw was indisputably appellant's employee and agent in regard to this contract, his knowledge is to be imputed to appellant. The general rule is that stated in *Johnson v. Associated Seed Growers, Inc.* (1942), 240 Wis. 278, 282, 283, 3 N. W. 2d 332:

". . . the principal is chargeable with and bound and affected by such knowledge and notice as his agent received in relation to the matter over which the authority extended while acting within the scope of his authority in negotiating or attending to a particular transaction. 2 Am. Jur., p. 286, sec. 368; *Brothers v. Bank of Kaukauna*, 84 Wis. 381, 395, 54 N. W. 786; *Venne v. Damrow Bros. Co.* 192 Wis. 249, 254, 212 N. W. 796."

Thus appellant must be held to have known an underground filter house was to be constructed at the time the contract was signed.

Appellant's knowlege of the underground filter house also refutes his contention that the National Pool plans

were to be followed for the actual pool part of the project, and the other plans followed for the filter arrangement. If all that was before the court was the contract and its incorporated documents, it must be admitted that an ambiguity would exist since there is no indication which set of plans is to be followed. It is therefore correct to say that it may reasonably be taken in more than one sense. *Wheelright v. Pure Milk Asso.* (1932), 208 Wis. 40, 46, 240 N. W. 769, 242 N. W. 486. However, the contract is not the only evidence before the court. The court has evidence of the appellant's knowledge that the National Pool plans were the ones to be followed with regard to both the pool and the filter arrangement:

" ' ". . . Where such ambiguity does exist, then evidence of the circumstances under which the contract was made is proper to enable the court, in light thereof, to read the instrument in the sense the parties intended, if that can be done without violence to the rules of language or of law." *Johnson v. Pugh,* 110 Wis. 167, 170, 85 N. W. 641. . . .' " *Wheelright v. Pure Milk Asso., supra,* page 45.

"When the language of a contract is not clear and unambiguous the practical construction given to it by the acts of the parties is of 'great force' or 'entitled to great weight.' " *Cutler-Hammer, Inc., v. Industrial Comm.* (1961), 13 Wis. 2d 618, 632, 109 N. W. 2d 468. *See also Joseph Mann Library Asso. v. Two Rivers* (1956), 272 Wis. 441, 446, 76 N. W. 2d 388; *Georgiades v. Glickman* (1956), 272 Wis. 257, 75 N. W. 2d 573.

"Under such circumstances the court ordinarily will place the interpretation upon the terms of the contract which the parties in the course of their dealings have adopted." *Cutler-Hammer, Inc., v. Industrial Comm., supra,* page 632; also *George J. Meyer Mfg. Co. v. Howard Brass & Copper Co.* (1945), 246 Wis. 558, 574, 18 N. W. 2d 468.

Here the course of dealings is not in dispute. Appellant followed the National Pool plans and constructed an underground concrete filter house. His performance according to the National Pool plans leaves no room for con-

tending the other plans were to be followed either for the pool or the filter arrangement.

The finding of fact and conclusion of law by the trial court to the effect that the contract of April 15th included the plans of National Pool which called for an underground filter system are amply supported by the credible evidence.

Appellant also claimed extras for certain changes required by the State Board of Health or which resulted directly from board hygienic requirements. The contract, in the incorporated supplementary conditions, states specifically:

Sec. 2.02 "All work and materials incorporated into the buildings, in addition to conforming to all requirements of the drawings and specifications, shall be in conformity with all local ordinances, requirements of the City Building Code, and local sanitary laws and rules and regulations, requirements of the Federal and State authorities having jurisdiction over this type of work, and rules and regulations of utility companies serving the building and premises."

The contract obligated appellant to supply a complete and operative swimming pool. The trial court found this obligation to include satisfaction of all health requirements and other laws so the pool could be used for the purpose intended.

Also, by the contract, it was agreed that the "manufacturer" would guarantee the equipment furnished would be capable of providing swimming pool water meeting the standards required by the board of health. Further, the contract states that design and construction would conform to the requirements of all health and building codes of the state and local boards.

While these were obligations of the manufacturer, it is clear that National Pool was not a party to the contract. Rather, National Pool was appellant's supplier. The first contact with National Pool was when it contacted appellant and supplied him with information on which

to base a bid. Thereafter, it was appellant who ordered and paid for the plans and, in fact, paid National Pool Company directly for the pool equipment and material supplied. National Pool's contract in this regard was with appellant; not respondent. By purporting to bind the manufacturer to supply a pool meeting board requirement, the appellant bound himself. One who purports to bind another but has no authority to so act thereby becomes subject to personal liability on the basis of an implied warranty of authority. Restatement, Agency (2d), p. 81, sec. 329 and comments.

If the pool that National supplied did not meet board requirements, thereby causing additional charges, it is a matter between National Pool and appellant on their contract, rather than between appellant and respondent.

Apparently there were various other items asserted at trial to be "extras." The trial court found these also to be included in the April 15th contract. However, appellant on appeal has failed to point out, nor have we been able to find, any evidence refuting the trial court's conclusion with respect to these items.

In view of the finding that the items claimed by appellant were not extras, his refusal to complete performance until paid constituted a breach of the contract. Time was expressly made of the essence in the contract and final payment was not due until the work was complete and the contract fully performed. The trial court concluded in light of the circumstances, that damages should be assessed for a four-day period based on the one day worked beyond the time limit and the three days necessary to complete the project. At $500 per day, the total assessed was $2,000. The trial court stated in its findings: "That the $500 per day damage provision is reasonable in light of the magnitude of the owner's apartment project (240 units) and its commitment to tenants as to pool facilities."

Appellant first contends that the delay was due to the delay of respondent's engineer in obtaining approval of

the plans by the State Board of Health. Approval was not obtained until June 9, 1965, but the fifty-six day construction period called for in the contract was measured from the date of the approval. The fifty-six day period therefore terminated August 4, 1965, and the trial court correctly computed the damages as of that date.

Appellant further contends that the pool was "substantially" complete on August 4th. However, the contract clearly states:

"Final payment shall be due 30 days after Substantial Completion of the work provided the work be *then fully completed and the contract fully performed.*" (Emphasis supplied.)

This can only mean that appellant was not entitled to payment until the work was 100 percent complete.

Appellant's refusal to complete performance until he was paid was, therefore, a breach of the contract.

A liquidated damages provision in a contract represents an attempt to predetermine damages in the event of a breach, to the extent those damages are reasonably contemplated by the parties at the time of the contract. McCormick, Damages (hornbook series), p. 608, sec. 150. In *Moritz v. Broadfoot* (1967), 35 Wis. 2d 343, 346, 151 N. W. 2d 142, the court stated:

"Assuming that they are reasonable, the seller may, upon breach, rely upon the sum fixed, and 'If he chooses liquidated damages he may retain the down payment without further fuss or bother.' *Zimmermann v. Thompson* (1962), 16 Wis. 2d 74, 76, 114 N. W. 2d 116."

The record reveals that the pool was in operation and use on August 4th. However, the wading pool was not complete and could not be used. In addition thereto there were defects in the pool. The appellant left the job on August 5th and refused to complete the pool and correct the defects right up to the time of trial in November of 1965 despite repeated requests of the owner for him to

do so. The fifty-six day period expired August 4th. The trial court found that the reasonable time necessary to complete the pool was three days after August 5th and awarded damages for four days in the amount of $500 per day as liquidated damages as provided in the contract.

Relief in equity is what appellant sought in attempting to foreclose a contractor's lien. "The foreclosure of a mechanic's or contractor's lien is an equitable proceeding." *Sid Grinker Co. v. Craighead* (1966), 33 Wis. 2d 42, 44, 146 N. W. 2d 478. A paramount rule of equity is the doctrine of "clean hands." Appellant unjustifiably refused to complete his required performance, demanding a payment to which he was not entitled and for which he had not supplied the lien waivers and other contractual prerequisites. The trial court correctly concluded the refusal was an attempt to force the respondent to make a payment not yet due. Thus appellant is in no position to demand equitable relief; and the trial court correctly so concluded and imposed upon him the consequences specified in the contract for his actions.

The plaintiff-appellant on this appeal has failed in his brief and appendix to comply with sec. (Rule) 251.34 (5) (b) and (c), Stats. His appendix does not include any of the trial court's 31 findings of fact and 17 conclusions of law, and failed to provide one word of the 541 page trial transcript or an abridgment thereof. When the questions presented on appeal cannot be determined without an examination of all the pleadings, evidence, and proceedings in the court below, the appellant is required by sec. (Rule) 251.34 (5) to print an appendix. Rule 251.34 (5) states, in part:

". . . The appendix shall contain:
"(a)  . . .
"(b)  Such part and only such part of the pleadings, *findings,* verdict, judgment or order sought to be reviewed as may be material in the consideration on appeal of the questions stated. (Emphasis supplied.)

"(c) An abridgment of the appeal record, *including the transcript,* but only so much thereof as is necessary and material to a consideration of the questions involved. . . ." (Emphasis supplied.)

This court stated in *Lindahl v. Lindahl* (1963), 19 Wis. 2d 379, 384, 120 N. W. 2d 142, 121 N. W. 2d 286, that:

". . . The purpose of this rule is to enable us in the limited time available to give due consideration to all the cases presented to us. *Dziengel v. Dziengel* (1955), 269 Wis. 591, 70 N. W. 2d 21."

In *Peterson Cutting Die Co. v. Bach Sales Co.* (1955), 269 Wis. 113, 118, 68 N. W. 2d 804, it is said:

"The volume of work to be done by this court does not leave time for the justices to search the original record for each one to discover, if he can, whether appellant should prevail. An appendix conforming to Rule 6 [now Rule 251.34] makes readily available to each justice the matters which he must know if he is to give intelligent attention to the issues presented by the appeal. It is counsel's duty to the court as well as to his client to furnish it, . . ."

The procedure generally adopted under such circumstances is that the court will assume the record supports the trial court's findings of fact. *Lindahl v. Lindahl, supra; Peterson Cutting Die Co. v. Bach Sales Co., supra;* and *Boyle v. Industrial Comm.* (1959), 8 Wis. 2d 601, 99 N. W. 2d 702.

The respondent has, in this instance, prepared and furnished a proper appendix including the findings of fact and an abridgment of the testimony. However, Sec. (Rule) 251.35 (4), Stats., permitting respondent to file a supplemental appendix does not relieve appellant of his obligation to incorporate in his own appendix a fair abridgment of the material evidence on both sides of the disputed questions. *Nothem v. Berenschot* (1958), 3 Wis.

2d 585, 590, 89 N. W. 2d 289. Under such circumstances the court has express authority to deny or impose costs against the offending party or strike his brief from the files. Sec. (Rule) 251.38 (2). Where a respondent has printed a supplemental appendix under these circumstances double costs have been allowed. *Seifert v. Milwaukee & Suburban Transport Corp.* (1958), 4 Wis. 2d 623, 91 N. W. 2d 236; *Nothem v. Berenschot, supra.*

We deem the inadequacies of the appellant's brief and appendix were such that in the exercise of discretion we must grant the respondent's *request* to allow double costs.

*By the Court.*—Judgment affirmed; respondent permitted to tax double costs.

The following memorandum was filed November 28, 1967.

PER CURIAM (*on motion for rehearing*). Appellant does not challenge this court's determination of the "extras" issue. His motion for rehearing looks solely to the issue of liquidated damages.

The contract provided that the respondent's engineer was to aid in obtaining approval of the swimming pool plans by May 1, 1965; and that the appellant was then to commence work immediately and to substantially complete such work by June 25, 1965. The contract then provided for $500 per day penalty for each day of delay beyond June 25th.

The circuit court held that "the contract specified a fifty-six-day construction period." Appellant challenged this finding in his post-trial motion. However, in his appellate brief, he did not raise this issue. He directed his argument on this point solely to contentions that the delay in construction was respondent's fault, and that in fact the pool was "operational and in use"

within the fifty-six-day period. In effect he conceded the lower court's interpretation of the time provision, when he stated at page 14 of his brief:

"It should be noted that the pool was operational, and in use, *within the contractual time limit of August 4, 1965.*" (Emphasis supplied.)

This court assumed that the contract provided for a fifty-six-day construction period. Appellant now contends that the contract contains no such provision. However, the issue was not presented to this court on appeal, and should not now be considered on rehearing.

In *Hope Acres, Inc., v. Harris* (1965), 27 Wis. 2d 285, 300a, 134 N. W. 2d 462, 135 N. W. 2d 775; *Bump v. Dahl* (1965), 26 Wis. 2d 607, 616a, 133 N. W. 2d 295, 134 N. W. 2d 665; *Uren v. Purity Dairy Co.* (1948), 252 Wis. 446, 459a, 459b, 32 N. W. 2d 615, 33 N. W. 2d 213; and *State ex rel. Wisconsin Trust Co. v. Phelps* (1920), 172 Wis. 147, 154, 176 N. W. 863, 178 N. W. 471; rehearings were denied, because a matter had not been raised in either the trial to the lower court or in the appeal to this court. Here, the issue was raised in the lower court but not on the appeal. Nevertheless we deem appellant has waived the right to now raise the issue by motion for rehearing. See 5 C. J. S., *Appeal and Error,* p. 547, sec. 1421 (a).

Appellant's second argument is that the contract entitled him to 95 percent of the contract price upon substantial completion. The contract did, but Article 26 of the General Conditions of the contract provides that all or part of any payment may be withheld to the extent the architect shall reasonably believe necessary to protect the owner from loss on account of defective work, claims filed, failure of the contractor to pay subcontractors, or a reasonable doubt that the contract could be completed upon the balance then unpaid.

The record reveals that appellant stopped work on August 5, 1965. The only request for payment which appears in the record was made August 9, 1965. His brief, however, refers to a request made on August 3d. Article 24 of the General Conditions provides that itemized requests for payment be made ten days before they fall due. Thus, appellant had no right to stop work August 5th–8th even if he had made a request for payment on August 3d because of an alleged refusal by respondent to pay him money due and owing. As of those dates nothing was due from respondent to appellant.

The motion for rehearing is denied without costs.