COURT OF APPEALS
DECISION
DATED AND FILED

November 12, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP569**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV3255

IN COURT OF APPEALS
DISTRICT I

CORY PLASTER AND LAURA PLASTER,

PLAINTIFFS-RESPONDENTS,

V.

EMERGENCY FIRE & WATER RESTORATION, LLC AND MICHAEL WYNE,

DEFENDANTS-APPELLANTS.

APPEAL from an order of the circuit court for Milwaukee County: KASHOUA KRISTY YANG, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Emergency Fire & Water Restoration, LLC and its president, Michael Wyne (together, "EFWR"), appeal from an order denying their

motion for declaratory judgment and to stay proceedings and compel arbitration. We affirm.

## BACKGROUND

¶2     In June 2020, Cory and Laura Plaster sued EFWR for breach of contract and theft by contractor under WIS. STAT. §§ 779.02 and 895.446 (2021-22),[1] and slander of title under WIS. STAT. § 706.13, all based on EFWR's alleged failure to complete restoration and remodeling work after a fire damaged their home in May 2017.  EFWR moved to stay the proceedings and compel arbitration. EFWR argued that a separate Terms and Conditions form was incorporated by reference into the parties' contracts,[2] and the Terms and Conditions required that the Plasters' claims be arbitrated.  The Plasters argued that they never received the Terms and Conditions, and therefore, they never agreed to arbitrate any of their claims.  The circuit court believed that it was required to decide EFWR's motion by applying the summary judgment standard, and it could not order arbitration without undisputed evidence that the Plasters agreed to arbitrate.

¶3     EFWR appealed, and we remanded the case to the circuit court with instructions to hold an evidentiary hearing "to resolve whether the Plasters had received, and agreed to, the Terms and Conditions form."  ***Plaster v. Emergency Fire & Water Restoration, LLC***, 2020AP1694, unpublished slip op. ¶22 (WI App

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Although the parties executed a total of three contracts, the Plasters say that their claims arise out of only the last contract.  In its brief, EFWR relies on references to the Terms and Conditions throughout all three of the contracts.  To the extent the parties disagree about whether one or all contracts are implicated in this case or as a consequence of EFWR's legal argument on appeal, this disagreement does not affect our analysis.

June 1, 2022). The circuit court held an evidentiary hearing and found that the Plasters never received the Terms and Conditions form. It concluded that, having made that finding, it "[did] not need to proceed any further and entertain a question of whether the Plasters agreed to the [T]erms and [C]onditions and the question of arbitration," and it denied EFWR's motion.

¶4      EFWR appeals.

## DISCUSSION

¶5      On appeal, EFWR does not challenge the circuit court's factual finding that the Plasters never received the Terms and Conditions. Instead, EFWR argues that it does not matter whether the Plasters received the Terms and Conditions containing the arbitration provision because the Terms and Conditions were incorporated by reference into the parties' contracts. Thus, EFWR argues, the Terms and Conditions and the arbitration provision were part of the parties' contracts as if they had been fully set forth in those contracts, and the Plasters indisputably signed and agreed to the contracts.[3]

¶6      The Plasters argue that the arbitration provision in the Terms and Conditions cannot be enforced against them because the circuit court found that they never received the Terms and Conditions. They argue that the cases relied upon by EFWR are distinguishable because they involve sophisticated commercial

---

[3] EFWR made this argument to the circuit court upon remand, but the circuit court did not address the argument. EFWR argues on appeal that the circuit court's failure to address the argument was erroneous. However, EFWR does not seek a second remand to the circuit court and instead asks us to decide the issue in the interest of judicial economy. We address the merits of EFWR's argument, and therefore, it is unnecessary to decide whether the circuit court erred by not resolving the issue, especially when the party asserting the error requests no relief.

parties, and because they did not involve an incorporated document that was in existence but not provided to the party against whom the incorporated document was being enforced.[4]

¶7    "Arbitration agreements are 'a matter of contract.'" *Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC*, 2018 WI 112, ¶40, 384 Wis. 2d 669, 920 N.W.2d 767 (citation omitted). "Wisconsin law recognizes the need to defer to the parties' agreement to arbitrate and the 'policy of encouraging arbitration as an alternative to litigation.'" *Id.*, ¶41 (citation omitted). However, this policy "is not limitless," and "only those disputes that the parties have agreed to so submit to arbitration are relegated to proceed in that forum." *Id.*, ¶¶42-43. Accordingly, a court should only order arbitration after it is satisfied that "'the formation of the parties' arbitration agreement'" is not in issue. *Id.*, ¶43 (citation omitted). Whether a party has agreed to arbitration is a question of law that we review independently. *Id.*, ¶38.

¶8    Here, EFWR argues that notwithstanding the circuit court's finding that the Plasters never received the Terms and Conditions, the arbitration provision contained in the Terms and Conditions can be enforced against the Plasters because the Terms and Conditions were incorporated by reference into the parties' contracts, and the Plasters agreed to be bound by the contracts. EFWR relies primarily on two cases: *Martinson v. Brooks Equipment Leasing, Inc.*, 36 Wis.

---

[4] The Plasters also move for an award of costs, fees, and attorneys' fees pursuant to WIS. STAT. RULE 809.25(3), alleging that the appeal is frivolous. In order for this court to award sanctions under RULE 809.25(3), the entire appeal must be frivolous. *Thompson v. Ouellette*, 2023 WI App 7, ¶¶20, 59, 406 Wis. 2d 99, 986 N.W.2d 338. Although we reject EFWR's arguments for the reasons discussed herein, we are not persuaded that the entire appeal is frivolous. Therefore, we deny the motion for costs, fees, and attorneys' fees under RULE 809.25(3).

2d 209, 152 N.W.2d 849 (1967) and *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440 (3d Cir. 2003).

¶9 In *Martinson*, the owner of an apartment complex solicited bids to build a pool. *Id.*, 36 Wis. 2d at 213. The bid materials included plans and specifications prepared by the owner's engineer, and called for an all-metal pool with a "deck level" filter system. *Id.* at 215. The bid form also included space for an alternative bid on an all-concrete pool. *Id.* Martinson Plumbing obtained information on building such a pool from National Pool Company and submitted a bid based on that information. *Id.* Martinson Plumbing won the bid, and a contract was signed stating that the pool would be constructed for $27,163 according to "plans to be submitted by National Pool Company." *Id.* at 216.

¶10 One week after the contract was signed, National Pool submitted plans and specifications showing an underground filter system, and these plans were received by Martinson Plumbing. *Id.* Shortly before completion of the pool, Martinson Plumbing submitted a demand for payment which included payment for "extras" over and above the contract price. *Id.* at 214. Martinson Plumbing claimed that one of these "extras" was an underground filter system. *Id.* at 214, 217.

¶11 The supreme court disagreed, concluding that the original contract clearly identified the plans to be submitted by National Pool as the ones to be followed in constructing the pool for the contract price. *Id.* at 217. It explained that it did not matter that those plans did not exist at the time the contract was signed because "matters not presently in existence may nevertheless be made a part of a contract by reference." *Id.* However, importantly, the court went on to explain that this principle should not be taken to mean "that items such as plans

and specifications unagreed upon may be incorporated without some identification in the original contract *and some form of adoption by the person sought to be charged with performance*." ***Id.*** (emphasis added).

¶12    In ***Martinson***, the facts "wholly support[ed] the conclusion that [Martinson Plumbing] adopted the plans submitted by National Pool." ***Id.*** Specifically, after receiving the National Pool plans, Martinson Plumbing began work and completed the underground filter system. ***Id.*** By "actually installing the pool in accordance with the National Pool plans without apparent objection unequivocally shows [that Martinson Plumbing] adopted them as part and parcel of the [parties' contract.]" ***Id.*** at 217-18.  Moreover, the court determined that Martinson Plumbing, through its employee, knew before the contract was signed that the pool filter system would be underground. ***Id.*** at 218.

¶13    Here, however, the facts are very different.  In ***Martinson***, the contractor received the National Pool plans after the contract was signed and then subsequently approved and adopted them, incorporating them into the contract, by actually constructing the pool according to those plans.  In contrast, the Plasters never received the Terms and Conditions.  Unlike the contractor in ***Martinson***, the Plasters did not have the opportunity to approve and adopt the Terms and Conditions they never received.

¶14    EFWR also cites ***Standard Bent Glass***, a Third Circuit case enforcing an arbitration provision that was contained in a document incorporated by reference into a contract between international merchants governed by the Uniform Commercial Code. ***Id.***, 333 F.3d at 442.  In that case, Standard Bent Glass (a Pennsylvania corporation) and Glassrobots Oy (a Finnish corporation) were negotiating a contract for Standard Bent Glass to purchase a glass fabricating

system from Glassrobots. *Id.* Glassrobots sent a standard sales agreement to Standard Bent Glass, and it contained three references to industry guidelines known as Orgalime S92. *Id.* at 443. Orgalime S92 recites "General Conditions for the Supply of Mechanical, Electrical, and Associated Electronic Products," and it also contains a binding arbitration clause for all contractual disputes. *Id.* at 443-44. Although Orgalime S92 was referenced in the standard sales agreement, Standard Bent Glass maintained that they never received a copy from Glassrobots. *Id.* at 444. Standard Bent Glass made five modifications to the standard sales agreement, but it did not alter or respond to the references to Orgalime S92, nor did Standard Bent Glass ever advise Glassrobots it had not received copy. *Id.* at 447-48. When Standard Bent Glass later sued Glassrobots, Glassrobots argued that the arbitration provision in Orgalime S92 applied, and Standard Bent Glass's claims against it were subject to arbitration. *Id.* at 443.

¶15     Ultimately, the court enforced the arbitration provision in the Orgalime S92 against Standard Bent Glass, but importantly, this conclusion was driven entirely by who the parties were and what the incorporated document was. The parties in *Standard Bent Glass* were both "seasoned merchants" of whom the law requires "a level of diligence that might not be appropriate to expect of a non-merchant." *Id.* at 447 n.10. There was also unrefuted evidence that the Orgalime S92 was in "accord[] with industry norms[,]" that submission of international trade disputes to arbitration was common industry practice, and that the president of Standard Bent Glass, who represented the company in negotiations, had "extensive experience in international trade." *Id.* at 448. The implication is that Standard Bent Glass, as a seasoned merchant represented in negotiations by an experienced executive and having actually negotiated contract terms, should have already been familiar with Orgalime S92 and the industry norm of submitting disputes to

arbitration. *See **Id.*** The Plasters are simply not like Standard Bent Glass, and the court in ***Standard Bent Glass*** recognized that "the analysis might very well be different" if the matter had "involved a non-merchant," especially when the "party claims it never received an incorporated document." ***Standard Bent Glass***, 333 F.3d at 447 n.10.

¶16 Instead, we conclude that the arbitration provision in the Terms and Conditions form cannot be enforced against the Plasters. The parties involved and the incorporated document at issue differ greatly from those involved in ***Standard Bent Glass***, and unlike the contractor in ***Martinson***, the Plasters never received the incorporated document (i.e., the Terms and Conditions) and never manifested any form of adoption of it. Under the circumstances presented here, we cannot conclude that the Plasters agreed to arbitrate disputes arising out of or related to EFWR's work.[5]

## CONCLUSION

¶17 We conclude that the arbitration provision contained in the Terms and Conditions cannot be enforced against the Plasters. Accordingly, we affirm the circuit court's order denying EFWR's motion for declaratory judgment and to stay proceedings and compel arbitration.

---

[5] Before concluding, we observe that failure to read a contract is generally not an excuse that relieves a person from the obligations of a contract. ***Deminsky v. Arlington Plastics Mach.***, 2003 WI 15, ¶30, 259 Wis. 2d 587, 657 N.W.2d 411. However, this principle presupposes *an opportunity* to read the entire contract because "[people], in their dealings with each other, cannot close their eyes to the means of knowledge *equally accessible to themselves and those with whom they deal ....*" ***Id.***, ¶30 (emphasis added; citation omitted). In this case, the Plasters did not have equal access to the Terms and Conditions. Indeed, the Plasters had *no* access to the Terms and Conditions because they were in EFWR's sole possession, and even a close reading of the original contracts would not have put the Plasters on notice that an arbitration clause was contained in the Terms and Conditions that would effectively shut them out of court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.