LEPPER and another, Respondents, vs. WISCONSIN SUGAR
COMPANY, Appellant.

*October 7—October 25, 1910.*
*May 5—June 1, 1911.*

*Contracts: Construction: Waters: Losses caused by "pollution:" Meas-
ure of damages: Riparian owners: Deposits of refuse in mill-
pond: Flowage rights: Injury to water power: Injunction: Abate-
ment of nuisance.*

1. If the meaning of language used in a contract or receipt can be
ascertained with reasonable certainty from the instrument itself,
recourse cannot be had to extrinsic facts to aid in its interpre-
tation.

2. In an agreement by which a beet sugar company agreed to pay
to plaintiffs, the owners of a grist-mill and a mill-pond upon
which they cut ice, a specified sum "in full for all losses sus-
tained by said" owners "in the past due to the pollution of the
water in their pond from the refuse discharged by the" sugar
company, and the latter was to "have the right to continue this
agreement on the payment of" a smaller sum annually, and
which further provided: "This agreement shall not abrogate
any water rights which said" owners "now possess,"—the words

Lepper v. Wisconsin Sugar Co. 146 Wis. 494.

"losses due to the pollution of the water" are *held*, both on the face of the writing and in view of the circumstances surrounding the parties, to have been used in a restricted sense as referring to damage done to plaintiffs' ice field by contamination of the water, and not including damage to the water power resulting from deposits in the mill-pond.

3. In an action by mill owners to recover damages for pollution of the water of a stream and the filling up of their mill-pond by refuse discharged from a beet sugar factory, and for an injunction and abatement of the nuisance, although one witness testified to the value of plaintiffs' property before the deposits were made in the pond and its value afterwards, and although it is claimed that a finding by the court assesses permanent damages to the property, it is *held*, in view of the record and the opinion of the trial judge, that the case was tried and disposed of upon the theory that the measure of plaintiffs' damages on account of such deposits was the cost of restoring the usefulness of the pond by their removal.

4. The finding, not the opinion, of the trial court controls, but that does not preclude reference to the opinion or to the record in the case for the purpose of ascertaining what the finding means, when it is not so clear and unambiguous as to bar construction.

5. It was not an error prejudicial to defendant in such a case to enjoin the use of a large settling basin within plaintiffs' flowage limits, into which refuse from the sugar factory was discharged and which lessened the capacity of plaintiffs' pond, even though it had not been specifically alleged that such basin was an infringement of their flowage rights, where the complaint did allege the creation of a nuisance upon plaintiffs' property and that by filling up plaintiffs' reservoir and diminishing its capacity defendant had virtually destroyed the water power, and general equitable relief was asked.

6. Where flowage rights are established either by grant or by prescription the owner of the servient state can do nothing to impair such rights. He cannot interfere or meddle with the territory so as to impair its capacity for storage.

7. It was proper, in allowing as damages in such case the cost of removing deposits in the mill-pond, coming from defendant's factory, to include deposits below the level of the bottom of plaintiffs' dam, or below the penstock, since those deposits impaired the capacity of the pond to receive natural deposits without injury to the water power.

8. It was error, however, to include in such damages the cost of removing deposits in defendant's settling basin, which by the terms of the judgment were to be removed by the defendant.

APPEAL from a judgment of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

The plaintiffs are riparian owners on the Menomonee river in the village of Menomonee Falls, where they own and operate a grist-mill. The defendant owns and operates a beet sugar factory on the same river about half a mile above plaintiffs' mill. The Menomonee river flows in a southerly direction through the lands of both parties. This action is brought to recover damages for alleged pollution of water, for the filling up of plaintiffs' mill-pond, and for an injunction restraining a continuance of such use and an abatement of the nuisance created by defendant upon plaintiffs' premises.

After alleging the ownership of certain described lands and the right to flow other lands also described, the gist of the action is stated as follows in plaintiffs' complaint: ·

"Said plaintiffs have been in possession and occupancy of said premises and the right of flowage above described, using the same for grist-mill purposes, there being situated upon the premises first above described a valuable grist-mill fully equipped with roller machinery, together with all other necessary equipment to make the same a first-class mill property. That through said premises above described flows what is known as the Menomonee river, and situated upon the first above described premises is a milldam maintained and used for the purpose of furnishing water power for the operation of plaintiffs' grist-mill situated upon said premises as aforesaid. That said grist-mill, together with said water power connected therewith, has been a very valuable property for grist-mill purposes, and plaintiffs have been able to do a large and prosperous business therefrom; and that the plaintiffs have been able to use said mill-pond as a valuable ice field, cutting and marketing therefrom large quantities of merchantable ice every winter, and that said mill-pond, prior to the act of said defendant in polluting the water therein as aforesaid, was exceedingly valuable as an ice field.

"That the defendant, within the last ten years, has constructed and equipped, on the east bank of said Menomonee river at a distance of about one-half mile, more or less, north

of said plaintiffs' grist-mill, a sugar factory where it manu-
factures sugar from sugar beets; that said sugar beet factory
is in operation for the purpose of manufacturing sugar from
said sugar beets several months in each year, and that said de-
fendant has ever since the construction of said factory, and
for several years prior to the commencement of this action,
caused to be turned into said Menomonee river, at or about
the point where its sugar plant is located, all of the sewage,
slops, and waste matter coming from said sugar beet factory,
to the extent of having filled in the bottom or bed of said
stream, changing the current thereof at several points, and
having filled up the plaintiffs' mill-pond or reservoir, dimin-
ishing the capacity of said mill-pond or reservoir fully one
half, if not two thirds, to plaintiffs' great damage, and that
defendant has, by reason of turning or running its sewage and
waste matter from said sugar factory into said river and mill-
pond belonging to the plaintiffs as aforesaid, polluted said
stream to the extent that when it flows through the mill-race
into plaintiffs' mill it damages the machinery, causes a dis-
agreeable, unpleasant, and unhealthy odor in and about the
mill and in and about the plaintiffs' premises; that it has de-
stroyed plaintiffs' ice field upon said mill-pond, for the rea-
son that it has polluted the water and caused such an odor to
arise therefrom that merchantable ice can no longer be cut or
used from said mill-pond; that by reason of filling up plaint-
iffs' reservoir and diminishing the capacity of the same it has
virtually destroyed the water power used in connection with
said mill property belonging to plaintiffs, thereby causing
irreparable injury, and that by the action on the part of said
defendant in polluting said stream to the extent it has, de-
fendant has created a nuisance upon the plaintiffs' premises;
that plaintiffs never gave any license or right to defendant or
any of its agents, officers, servants, or employees to use said
river as a sewage basin, or a sewage system, carrying off
*débris* and waste matter from defendant's sugar plant situ-
ated as aforesaid; that before the happening of the grievance
herein set forth, plaintiffs' mill property was a very valuable
and desirable property, and that by reason of defendant's
actions as aforesaid the plaintiffs have been damaged in the
sum of $20,000, and that plaintiffs have no adequate remedy

at law to prevent and stop defendant from further trespassing upon plaintiffs' rights by maintaining the nuisance above set forth, and, as plaintiffs are informed and believe, the defendant threatens and intends to continue to do as above set forth.

"Wherefore, plaintiffs pray the court that they have judgment against the defendant in the sum of $20,000, and that the court grant an order to abate the said nuisance and restrain defendant, its agents, servants, and employees, and all persons acting in its behalf, from discharging its sewage from said sugar beet factory into said Menomonee river at any point where it will corrupt the waters of said river flowing through the lands of plaintiffs, or into the mill-pond of the plaintiffs above described, and for such other and further relief as may be deemed just and equitable, and for the costs and disbursements herein."

The answer contains a general denial, and also alleges that on the 26th of December, 1905, plaintiffs and defendant entered into a written contract whereby defendant agreed to pay plaintiffs a certain sum for whatever damage it may have done in the use of the Menomonee river; that plaintiffs agreed to accept said sum in full satisfaction of all previous damages; and that defendant has fully executed said contract on its part.    The contract referred to reads as follows:

"Memorandum of agreement between *Wisconsin Sugar Company* of Menomonee Falls, and M. F. Lepper & Co. of the same place, as follows:

"The *Wisconsin Sugar Company* agrees to pay to M. F. Lepper & Co. on March 1, 1906, $1,250. Said sum to be payment in full for all losses sustained by said M. F. Lepper & Co. in the past due to the pollution of the water in their pond from the refuse discharged by the *Wisconsin Sugar Company* and to include rental for the use of icehouse belonging to said M. F. Lepper & Co. to Dec. 15, 1906. It is further agreed that the *Wisconsin Sugar Co.* shall have the right to continue this agreement on the payment of $400 annually. Any repairs on the icehouse desired by the *Wisconsin Sugar Company* shall be made at its own expense.

"This agreement shall not abrogate any water rights which the said M. F. Lepper & Co. now possess.

"WISCONSIN SUGAR COMPANY,
"R. G. Wagner, Prest.
"M. F. LEPPER & Co.

"Signed Dec. 26, 1905."

The evidence shows that in 1905 the defendant caused to be erected within plaintiffs' flowage limits a settling basin into which refuse was discharged and then permitted to flow into the river.

The court found as facts (1) that the contract in question was not intended to cover anything except the damage to the plaintiffs' ice field; (2) that the action was brought within a reasonable time and that the plaintiffs are not guilty of laches; (3) that the defendant, both before and after the erection of the settling basin, made an unreasonable and unlawful use of the river by discharging refuse into it; (4) that it created a nuisance upon plaintiffs' premises by such use; (5) that it is its intention to continue to make such use of it unless restrained; (6) that on account of such use plaintiffs' mill-pond has been filled up and its capacity diminished about one half, and it has been rendered unfit to harvest ice from; and (7) that plaintiffs have sustained damages by reason of the unlawful acts of the defendant as follows: $1,500 for additional use of steam owing to diminished water power because of the filling up of its mill-pond; $500 for loss of ice field for the season of 1906–7; and $6,500 as the reasonable cost of restoring the mill-pond to its former state.

As conclusions of law the court found (1) that plaintiffs are entitled to a permanent injunction against the defendant enjoining and restraining the defendant company, its agents, servants, and employees, and all persons for and on its behalf, from continuing to flow or permitting to flow any of the sewage or offal from the defendant's beet sugar plant into the Menomonee river at the point where it is now and was at the

time of the commencement of this action discharging its sew-
age into said river, or at any other point along said river;
(2) that the plaintiffs are not guilty of laches in the com-
mencement of this action; (3) that the erection and construc-
tion of what is called a "settling basin" by the defendant com-
pany at the point where it is now erected, or at any other
point in said river at or near its sugar plant, is an unau-
thorized obstruction of plaintiffs' easement of flowage of said
river, and that the plaintiffs are entitled to have the defend-
ant, its agents, servants, and employees, enjoined and re-
strained from continuing the use of said settling basin in the
future; and (4) that the plaintiffs are entitled to recover
damages against the defendant for damages sustained by rea-
son of the defendant's invasion of the plaintiffs' property
rights, as per findings of fact, to the extent of $8,500, together
with their costs and disbursements in this action.

From a judgment entered accordingly defendant appealed.

For the appellant there were briefs by *Nath. Pereles &
Sons,* attorneys, and *Burr W. Jones,* of counsel, and oral ar-
gument by *Mr. Nathan Pereles, Jr.,* and *Mr. Jones.* Upon
the effect and construction of the settlement agreement, they
cited, among other cases, *Steffen v. Supreme Assembly,* 130
Wis. 485; *Kammermeyer v. Hilz,* 107 Wis. 101; *Fricke v.
Quinn,* 188 Pa. St. 474, 41 Atl. 737; 2 Farnham, Waters,
secs. 515–20; *Weille v. Reinhard,* 108 Wis. 72; 8 Cyc. 533–
34. As to plaintiffs' right to relief by injunction: Gould,
Waters, § 220; *Cobb v. Smith,* 23 Wis. 261, 265–67; *Gates
v. Paul,* 117 Wis. 170, 181–82; *Kruschke v. Stefan,* 83 Wis.
373; *Likens v. Likens,* 136 Wis. 321; *McCann v. Welch,* 106
Wis. 142; *Rogers v. Van Nortwick,* 87 Wis. 414; *Avery v.
Vermont E. Co.* 75 Vt. 235, 59 L. R. A. 817, 884, note.

For the respondents there was a brief by *Ryan, Merton,
Newbury & Jacobson,* and oral argument by *T. E. Ryan* and
*M. A. Jacobson.* As to the measure of damages, they cited
3 Joyce, Damages, § 2148; *Neely v. Detroit S. Co.* 138 Mich.

469, 101 N. W. 664; *Elder v. Lykens Valley C. Co.* 157 Pa.
St. 490, 27 Atl. 545; *Watson v. New Milford,* 72 Conn. 561;
*Drake v. Lady Ensley C. I. & R. Co.* 102 Ala. 501, 24 L.
R. A. 64; *Carson v. Hayes,* 39 Oreg. 97, 65 Pac. 814; *People v. Hulbert,* 131 Mich. 156, 64 L. R. A. 265; *Dwight P.
Co. v. Boston,* 122 Mass. 583.

The following opinion was filed October 25, 1910:

VINJE, J.   1. The first assignment of error is that the
contract of December 26, 1905, is unambiguous and covered
all damages up to the time it was entered into, and that it was
error to give it a different construction than its language required, in the absence of fraud or mistake.   No fraud or
mistake is claimed, so those elements are eliminated from the
case.   Did the trial court err in its interpretation of the contract in view of the facts and circumstances surrounding the
parties at the time it was made?   It cannot be denied that the
phrase "all losses sustained in the past due to the pollution of
the water" is broad enough to include damage to the water
power resulting from the deposits in the pond as well as damage to the ice field resulting from contaminating particles
being held in suspension in its water, or from a contaminating
deposit therein as a result of pollution, or both.   That is, it
may have a broad meaning or it may have a restricted meaning.   Which interpretation shall the court give it?   If its
meaning can be ascertained with reasonable certainty from
the instrument itself, then recourse cannot be had to extrinsic
facts to aid in its interpretation.   Let us, therefore, first see
what we can gather with reasonable certainty from the agreement itself.   From an inspection thereof it is clear that the
parties made an adjustment of all losses sustained in the past
due to pollution of the water in plaintiffs' pond and provided
for the future adjustment of such losses by the payment of
$400 annually, at the option of the defendant.   It is equally
clear that they excluded from such adjustment, both past and

future, any water rights which the plaintiffs then possessed, for they say: "This agreement shall not abrogate any water rights which the said M. F. Lepper & Co. now possess." Primarily their water rights were their right to water power. The basic right of any owner of water power is the right to use the water for power purposes. Hence we think the writing itself shows that the term "pollution" was used in the restricted sense, and was understood by the parties themselves to refer only to such damage as resulted directly from contamination occasioned by impurities; and that water-power rights and all rights flowing therefrom were excluded.

But if there is any serious doubt as to the correctness of this interpretation gathered from the instrument itself, and it should be held that the contract is so uncertain that recourse must be had to the facts and circumstances surrounding the parties in order to ascertain what they, so circumstanced, meant by the language employed, then we are convinced such facts and circumstances completely dispel the doubt. For four years past the defendant, by its unreasonable use of the stream, had damaged plaintiffs' ice business in the sum of from $400 to $500 per year. It had filled up their mill-pond so that it was necessary to expend about $300 per year more for fuel to replace power lost, and, in addition to that, it would cost at least $5,000, as found by the court, to restore the pond to its former state. Under such circumstances the inadequacy of the consideration in the contract may be taken into account in construing its terms; and such inadequacy can be reconciled only by giving the contract the construction put upon it by the trial court, which we deem to be the correct construction.

2. Error is also assigned because, it is alleged, the court found the damage resulting from the deposit in the mill-pond as permanent damages to plaintiffs' property. This contention is based upon the claim that the court's finding bears such a construction, and upon the fact that one witness testi-

fied as to the value of plaintiffs' property before the deposits were made and its value afterwards. The finding relied upon, after finding $500 damages to the ice field for one season, and past damages in the sum of $1,500 for additional use of steam, proceeds as follows:

"That the lands upon which the said plaintiffs have the flowage right heretofore referred to have been filled up and filled in to a considerable extent by the defendant company in discharging, depositing, and emptying its waste matter therein, thereby greatly depreciating the storage capacity of the plaintiffs' reservoir and diminishing the amount of power it is possible to develop from said water storage, all of which is calculated and intended to and does greatly diminish the value of the flouring mill or grist-mill property of the plaintiffs as above described, all to the plaintiffs' damage in the sum of $8,500, which said sum included the past damages for additional use of steam and destruction of ice field for one season as above found."

Counsel for defendant say in their brief that the case was tried by the plaintiffs on the theory that the measure of damages was the cost of the removal of the deposit. This is undoubtedly true, and it is equally true that it was disposed of by the trial court on that theory. In its opinion the court says:

"The question of damages is a perplexing one, and it has been extremely difficult to arrive at a satisfactory conclusion on that question from the evidence in the case. The testimony produced by both sides as to the cost of restoring the mill-pond to a reasonable condition for the use of plaintiffs is quite unsatisfactory."

The court then goes on to discuss this testimony and to give reasons for arriving, from such testimony, at the conclusion it does on the question of damages. It needs no argument to show that the court did not assess permanent damages to plaintiffs' property.

3. Further error is assigned on the ground that as to each item of damage found by the trial court the evidence was too

vague and uncertain to base a finding upon, and that each finding is contrary to the weight of evidence. After a careful reading of the record we are of opinion that it negatives both of these contentions. There was ample evidence to sustain a much larger assessment of damages as to each item, and especially so as to the reasonable cost of restoring the mill-pond.

4. The only other assignment of error it is deemed necessary to consider is, that it was error to enjoin the use of the settling basin and to order the same removed, because the question whether or not it was an infringement of plaintiffs' flowage rights was not within the. issues in the case. It is true the complaint does not allege that the settling basin is an infringement of their flowage rights, but it does allege that defendant, by its unreasonable use of the river, has created a nuisance upon plaintiffs' property, and it asks to have this nuisance abated, and prays for such other and further relief as may be deemed just and equitable; and it also alleges "that by reason of filling up plaintiffs' reservoir and diminishing the capacity of the same, it has virtually destroyed the water power used in connection with said mill property belonging to plaintiffs, thereby causing irreparable injury." It seems to be a verity in the case that defendant's settling basin is within the plaintiffs' flowage limits, and that it is about 300 feet long and 100 feet wide. Naturally it lessens the capacity of plaintiffs' reservoir by the cubical contents of the water that would lie within its limits if it were not there. The evidence shows that plaintiffs made a twofold use of their flowage rights: first, to secure the required head of water to run their mill; and second, to use the overflowed land as a storage reservoir to draw on. Where flowage rights are established either by grant or prescription, the owner of the servient estate can do nothing to impair such rights. He cannot interfere or meddle with the territory so as to diminish its capacity for storage. 2 Farnham, Waters, p. 1784; *Watuppa R. Co. v. Mackenzie,* 132 Mass. 71. In the latter case the owner of

the servient estate sought to raise the level of a portion of the overflowed land, but the court held that he could be enjoined at the suit of the owner of the reservoir rights.

Inasmuch as there is no dispute about the fact that the settling basin lies within the flowage or reservoir rights of the plaintiffs, it is not perceived how the defendant is prejudiced, even if the court abated it upon a ground not mentioned in the complaint, where the ground upon which it was abated existed and was a lawful one for abating it.

*By the Court.*—Judgment affirmed.

SIEBECKER, KERWIN, and TIMLIN, JJ., dissent.

Upon motion of the appellant a rehearing was granted on January 31, 1911, and the cause was reargued on May 5, 1911.

For the appellant there were briefs by *Nath. Pereles & Sons,* attorneys, and *Burr W. Jones,* of counsel, and oral argument by *Mr. Jones* and *Mr. Nathan Pereles.*

For the respondents there was a brief by *Ryan, Merton, Newbury & Jacobson,* and oral argument by *M. A. Jacobson.*

The following opinion was filed June 1, 1911:

VINJE, J.   A motion for rehearing was granted in this case upon the following question: Did the trial court apply the proper measure of damages, and are the damages awarded excessive? Upon the first branch of the question it is urged now, as before, that the finding set out in the foregoing opinion is a specific, unambiguous finding of permanent damage to plaintiffs' mill property, and not a finding of the reasonable cost of restoring such property to its former condition. It is also urged that the finding of the trial court, and not its written opinion, controls. In a case where both parties insist that it was tried throughout on the sole theory that the proper measure of damages was the cost of removal of the deposits in

the mill-pond and overflowed lands; where the trial judge in his written opinion states in substance that the evidence as to the cost of such removal is the basis of his finding; and where the whole evidence, covering many pages in the printed case, with the single exception of one item of evidence from one witness as to the difference of market value of the property before and after the filling, supports such theory, we cannot construe the finding referred to as assessing permanent damages. The trial court, after speaking of the effect of the filling up complained of, says, "all of which is calculated and intended to and does greatly diminish the value of the flouring-mill or grist-mill property of the plaintiffs as above described, all to the plaintiffs' damage in the sum of $8,500, which said sum included the past damages for additional use of steam and destruction of ice field for one season as above found." It is hardly possible that this finding, standing by itself alone, could be construed as finding *permanent* damages to plaintiffs' property, for it is absolutely silent as to *permanent* damages, and it expressly finds that the damage for additional use of steam is limited to *past* damages, and the damage to the ice field is limited to one season only. It is therefore clear that as to the two latter elements permanent damages were not considered. We think it is equally clear, when read in the light of the record, that, as to the damage caused by the filling, the court had in mind only the reasonable cost of its removal. The whole testimony was directed to that measure of damage; it was tried solely upon that theory; and we must construe the finding mentioned to the effect that it was so disposed of by the court.

Counsel for defendant is no doubt correct in claiming that the finding and not the opinion of the trial court controls. But that does not preclude reference to the opinion or to the record in the case for the purpose of ascertaining what the finding means, when it is not so clear and unambiguous as to bar construction. It is always pertinent in construing am-

biguous language to consider under what circumstances and with reference to what subject matter it is used. *Klueter v. Joseph Schlitz B. Co.* 143 Wis. 347, 128 N. W. 43.

Upon the second branch of the question, namely, are the damages awarded excessive, we have come to the conclusion, upon a more careful examination of the record, that the court included in its award of damages for restoring the mill-pond and overflowed lands the amount of deposit contained in the settling basin. This fact escaped the attention of the writer of the opinion and, owing to that inadvertence, a proper reduction was not made from the allowance of $6,500. It is, of course, self-evident that defendant should not be compelled to remove the deposit in the settling basin and also pay plaintiffs for doing it. Such basin, it is admitted, contains approximately 30,000 square feet. Plaintiffs' evidence shows the depth of the deposit therein in three places as follows: 11.6 feet, 5.6 feet, and 6.2 feet. This makes an average depth of 7.73 feet, or substantially 8,590 cubic yards of deposit. Allowing twenty-three cents per cubic yard, the amount presumably allowed by the trial court on the basis of $6,500 for 28,831 cubic yards, makes an overcharge of $1,975, which should be deducted from the amount of the judgment as of the date of its rendition. It is true defendant's evidence was to the effect that there was not to exceed an average depth of 3.6 feet of deposit in the settling basin, but the trial court seems to have adopted substantially the claims of plaintiffs as to the amount of deposit, and we shall do likewise as to the amount in the settling basin.

It is further claimed that it was error to allow for about 10,000 cubic yards of deposit below the bottom of plaintiffs' dam, or below the penstock, for the reason that such deposit could not injure plaintiffs. We deem this assignment of error not well taken, for two reasons: in the first place, the evidence showed that in order to secure an even, steady flow of water on the wheel it was necessary to have the pond deeper

than the penstock, and, in the second place, it is a matter of common knowledge that there is a tendency of mill-ponds to fill up gradually from natural causes. Hence a pond that is capable of receiving substantially 10,000 yards of such natural deposit before damage is done to the water power is more valuable than one that is already full. Plaintiffs were entitled to have their mill-pond restored to its former condition of usefulness, so far as that condition was interfered with by the defendant; and we understand that only deposits coming from defendant's factory were considered by the trial court in its assessment of damages.

As to items of damage for additional use of steam, and damage to ice field, found by the trial court, we think the evidence sustains them.

*By the Court.*—The former judgment of this court herein is vacated and set aside, and the judgment of the circuit court is modified by deducting therefrom as of the date of its entry the sum of $1,975, and, as so modified, is affirmed, with costs to the defendant.

SIEBECKER, KERWIN, and TIMLIN, JJ., dissent.