PATTI, Appellant, v. WESTERN MACHINE COMPANY, Respondent.

*No. 642 (1974). Submitted on briefs March 4, 1976.—*
*Decided May 4, 1976.*
(Also reported in 241 N. W. 2d 158.)

For the appellant the cause was submitted on the briefs of *John W. Emmerling* and *Edward D. Styles* of Milwaukee.

For the respondent the cause was submitted on the brief of *William H. Alverson, Morris Karon* and *Godfrey & Kahn, S. C.* of Milwaukee.

WILKIE, C. J.   This controversy involves a lawsuit by the plaintiff-appellant, Lawrence A. Patti, to recover deferred compensation from the defendant-respondent, Western Machine Company.

Patti began working for the Western Machine Company 1939 as a packer in the shipping department. He gradually rose through the ranks to become a vice-president in 1945 and a member of the board of directors in 1950. His responsibility was plant operations.

In 1968 an insurance agent presented to Daniel Maddigan, the president of the company, a proposal for a deferred compensation plan which was to be funded through the purchase of life insurance policies on the lives of key executives. At its annual meeting on April 1, 1969, the board approved a deferred compensation agreement for Maddigan. At this meeting Patti inquired as to the feasibility of similar agreements with other key officers of the company, and Maddigan was authorized to discuss such agreements with corporate counsel. The company purchased an insurance policy on Patti's life on May 16, 1969. All of the key executives, including Patti, discussed the details of the plan in informal sessions throughout 1969.

On September 26, 1969, the board authorized deferred compensation agreements for Patti and other key executives. The agreement with Patti was predated to January 1, 1969. It provided in relevant part as follows:

"2. Amount of Deferred Compensation. Upon termination of Employee's employment by Company, whether by reason of his death, disability or retirement, Employee or his designated beneficiary, as the case may be, shall be entitled to receive from Company deferred compensation payments in the amount of $2,000.00 per year, subject to (a) being increased by $500.00 per year (to a maximum aggregate sum of $6,000.00 per year) for each full calendar year of Employee's continued employment by Company hereunder, commencing with the year 1969; and (b) being decreased by $1,000.00 (but in no event

below $2,000.00 per year) per year for each calendar year or part thereof after November 30, 1981, in which Employee shall not have retired and shall continue to be employed by Company."

Patti submitted a letter of termination to Maddigan on April 7, 1970, listing health reasons as his motivating factor. He requested the board "to seriously and thoughtfully consider me eligible for deferred compensation."

The request was denied and, after repeated attempts to collect payments under the deferred compensation agreement, Patti sued Western Machine, claiming that he had retired and was entitled to such payments under the agreement. After a trial to the court, the trial court disagreed and judgment was entered dismissing Patti's complaint.

On this appeal, the first issue is whether the word "retirement," as used in the deferred compensation agreement between the parties, is ambiguous on its face so that the trial court was justified in resorting to extrinsic evidence in order to ascertain the intent of the parties. We conclude that the word "retirement" was ambiguous as used in the agreement, and that the trial court properly considered extrinsic evidence, in order to ascertain the true intent of the parties to the agreement.

The ultimate aim of all contract interpretation is to ascertain the intent of the parties. If this intent can be determined with reasonable certainty from the face of the contract itself, there is no need to resort to extrinsic evidence.[1] If, however, the language of the contract is ambiguous, then the court is not restricted to the face of the instrument in ascertaining intent, but may consider extrinsic evidence.[2] Words or phrases in a contract are

[1] *Lepper v. Wisconsin Sugar Co.* (1910), 146 Wis. 494, 501, 128 N. W. 54, 131 N. W. 985.

[2] *Cargill Coal Co. v. Valentine* (1957), 275 Wis. 598, 602, 82 N. W. 2d 883.

ambiguous when they are reasonably susceptible of more than one meaning.[3]

The trial court correctly determined that the word "retirement" was ambiguous in the deferred compensation agreement between Patti and Western Machine. The agreement states only that Patti is entitled to deferred compensation upon termination of employment by reason of "death, disability or retirement." It does not explain or define the meaning of the word retirement in any way. As the trial court noted, the mere use of the word "retirement" in an employment setting is patently ambiguous because it may mean anything from voluntary, unilateral termination to involuntary, forced termination. Resort to extrinsic evidence is, under these circumstances, the only way to assign to this word the meaning intended by the parties.

Counsel for Patti argues that the meaning of the word "retirement" is clear and unambiguous because it is defined in the same section it is used. This definition is alleged to exist in the language which provides for a base compensation of $2,000 per year, subject to a $500 increase "for each full calendar year of Employee's continued employment by Company hereunder, commencing with the year 1969," and further subject to a decrease of $1,000 "per year for each calendar year or part thereof after November 30, 1981, in which Employee shall not have retired and shall continue to be employed by Company." In other words, it is contended that, because it is possible to receive payments under the contract as early as 1969, it must also be possible to retire as early as 1969.

This is a misreading of the terms of the contract. The events of "death, disability or retirement" are clearly established as the conditions precedent to the obligation

---

[3] *Sipple v. Zimmerman* (1968), 39 Wis. 2d 481, 496, 159 N. W. 2d 706, and cases cited therein.

of the company to pay any deferred compensation at all. The sliding scale, providing for increasing benefits from 1969 until 1981 and decreasing benefits thereafter, merely fixes the terms and amount of payment. This language does not define or explain the content of the word "retirement," but stipulates that, once the condition of whatever "retirement" is has been fulfilled, the company will pay according to the sliding scale. It is entirely possible, as the trial court later determined, that the parties intended that Patti could suffer death or disability as early as 1969, but could not unilaterally retire at that early date, after having just signed the agreement. The rule is that the language of a contract establishing the terms of payment does not create or cancel the language of the contract establishing the obligation of payment.[4] Normally, these two sets of language are in different provisions of the contract, but the fact that they are here in the same provision does not render the rule inapplicable.

The second issue on this appeal is whether the trial court's finding that the parties intended the word "retirement" to refer to voluntary termination of employment at age sixty-five, or at an earlier age upon the consent of the board of directors, is contrary to the great weight and clear preponderance of the evidence.

Although the construction of an unambiguous contract is a matter of law, when there is ambiguity, as here, the sense in which the parties intended the words to be used is a question of fact.[5] The finding of the trial court regarding the intended meaning of the word must there-

[4] For applications of similar rules, see: *Racine v. Town of Mount Pleasant* (1973), 61 Wis. 2d 495, 501, 213 N. W. 2d 60; *Van Rooy Printing Co. v. Harvey Pierre Post* (1948), 252 Wis. 524, 526, 32 N. W. 2d 329.

[5] *Lemke v. Larsen Co.* (1967), 35 Wis. 2d 427, 151 N. W. 2d 17; *Woodall v. Democrat Printing Co.* (1947), 250 Wis. 348, 27 N. W. 2d 437.

fore be upheld unless it is contrary to the great weight and clear preponderance of the evidence.

In the instant case the trial court found that the parties intended the word "retirement" to mean "voluntary termination of employment at age sixty-five or at an earlier age upon the consent of the employer corporation's Board of Directors." This finding is definitely not contrary to the great weight and clear preponderance of the evidence and, indeed, is the most reasonable finding suggested by the evidence.

Evidence internal to the contract itself indicates this meaning. For example, the parties provided in section two that Patti's deferred compensation would be decreased by $1,000 for each year "after November 30, 1981, in which Employee shall not have retired." This suggests that 1981 is the preferred time of retirement. Patti would be sixty-five in 1981, and thus the further inference that the parties envisioned sixty-five as the preferred retirement age is also justified. Furthermore, as the trial court pointed out, section one of the contract provides that "[n]othing in this Agreement shall preclude either party from terminating the employment of Employee by Company." From this language it can be inferred that the parties regarded a unilateral, voluntary termination by Patti before age sixty-five as an event distinct from "retirement," and did not intend, as Patti claims, to include unilateral, voluntary termination before sixty-five within the meaning of the word "retirement."

But it is the evidence extrinsic to the agreement which proves that the parties intended the meaning of "retirement" found by the trial court. Daniel Maddigan, the president of Western Machine, testified that all of the key executives, including Patti, "discussed the retirement on the basis that it would be the same age as our retirement trust which is sixty-five which is the policy of the company." Article VII of the Employees Trust provides that "the normal retirement age for all employees shall

be age sixty-five (65)." Maddigan further testified that a key executive might be permitted to retire before sixty-five and still receive deferred compensation but only "with a mutually agreed consent by the individual and the corporation." John Leack, a vice-president of Western Machine, testified that the board of directors turned down Patti's request for deferred compensation at the April 20, 1970, meeting because they intended that retirement be at age sixty-five, unless an earlier age was agreed upon by mutual consent. In fact, Patti's retirement letter of April 7, 1969, also confirms the trial court's finding. In this letter he "respectfully request[s] the Board to seriously and thoughtfully consider me eligible for deferred compensation," while at the same time he "require[s]" that his pension money be paid very shortly. This language of request is consistent with a recognition on Patti's part that he could retire before age sixty-five only with the consent of the board, and inconsistent with a belief that the word "retirement" included unilateral termination before age sixty-five.

Counsel for Patti argues that *Dickson v. Hausman*,[6] a Washington case relied upon by the trial court, is in its favor because Patti fits within the definition of the word "retirement" given in that case. The trial court relied upon *Dickson v. Hausman*, and upon *Watson v. Brower*,[7] a New Jersey case, only for the proposition that the mere use of the word "retirement" was ambiguous, and not for the substance of the definitions of "retirement" given in those cases. The trial court's task was not to set forth an abstract, general definition of the word "retirement," but to ascertain the intention of the parties when they used this word in this agreement. Obviously, decisions from other jurisdictions determining the intention of other parties are not controlling when the issue is the intention of Patti and Western Machine at the time they

[6] (1966), 68 Wash. 2d 368, 413 Pac. 2d 378.

[7] (1957), 24 N. J. 210, 131 Atl. 2d 512.

entered into this particular deferred compensation agreement.

Counsel for Patti also argues that the trial court definition is burdensome and oppressive in that it introduced a condition precedent to the entitlement to deferred compensation, when none was present in the agreement itself. On the contrary, as explained above, the contract clearly establishes "death, disability or retirement" as conditions precedent to any obligation of the company to pay deferred compensation. The trial court's finding of the intended meaning of the word "retirement" only defines an already existing condition precedent; it does not add one that is not in the contract.

*By the Court.*—Judgment affirmed.