**WISCONSIN REAL ESTATE INVESTMENT TRUST, Plaintiff-Appellant,**

v.

**George WEINSTEIN, et al., Defendants-Appellees,**

**and**

**Telvest, Inc., et al., Additional Parties to Counterclaims.**

No. 82–2205.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 7, 1983.

Decided July 6, 1983.

As Amended July 26, 1983.

Rehearing and Rehearing En Banc Denied Sept. 28, 1983.

Richard C. Ninneman, Whyte & Hirschboeck, S.C., Milwaukee, Wis., for plaintiff-appellant.

Irvin B. Charne, Charne, Glassner, Tehan, Clancy & Taitelman, S.C., Milwaukee, Wis., for defendants-appellees.

Before BAUER and COFFEY, Circuit Judges, and HOLDER, District Judge.[*]

COFFEY, Circuit Judge.

The plaintiff, Wisconsin Real Estate Investment Trust ("WREIT"), brought this action to recover monies and shares of WREIT stock paid to the former Property manager and Trust Advisor of WREIT in direct contravention of the express provisions of the WREIT Declaration of Trust. REIT Property Managers, Ltd. ("RPM"), Weinstein Associates, and George and Stanley Weinstein (collectively, "the defendants") counterclaimed for, *inter alia,* the attorneys' fees and expenses incurred defending this action. The district court found no impropriety in the special compensation paid to the defendants and dismissed the plaintiff's complaint and ordered judgment for the defendants on their claim for attorneys' fees and expenses. We hold that the payment of the special commissions contravened the unambiguous language of the Declaration of Trust and reverse the decision of the district court.

## I.

WREIT was organized under Wisconsin law as a common law business trust.[1] In order to take advantage of the substantial tax benefits enjoyed by real estate investment trusts organized in accord with Internal Revenue Code requirements, WREIT had no employees of its own but contracted with outside entities for the administrative and management services necessary to operate the Trust. The Declaration of Trust contains specific provisions approving two such functionaries designated as the "Trust Advisor" and the "Property Manager."[2]

---

[*] The Honorable Cale J. Holder, District Judge for the Southern District of Indiana, is sitting by designation.

[1.] An express provision contained in the Declaration of Trust specifies that Wisconsin law will govern in resolving any intra-trust disputes. Therefore, the instant controversy will be resolved according to Wisconsin case law.

[2.] The Declaration of Trust is the governing legal document of the Trust setting forth, *inter*

In 1975, as part of a reorganization plan intended to preserve the then declining assets of WREIT, the trustees offered the position of property manager to George Weinstein. Weinstein accepted and formed RPM to provide the property management services for the Trust.[3] From the inception of RPM, Weinstein acted as corporate president and in 1976 his son, Stanley, became RPM's sole stockholder and executive vice-president.[4] All fees, except reimbursement expenses, paid to RPM as trust manager passed through the corporation into Weinstein Associates, a New York partnership formed in 1972 by George and Stanley Weinstein to provide financial consulting, accounting and real estate advisory services. After George Weinstein ("Weinstein") was elected to the Board of Trustees and made president of the Trust in 1977, RPM functioned as both the Trust Advisor and Property Manager of the Trust up until 1980.

The relationship between the Trust and RPM after July 1, 1977 was maintained on a year-to-year contract basis and expressly provided for the payment of special fees to RPM in the form of commissions. RPM received special fees of $48,530 in 1977,

$40,095 in 1978, $68,460 in 1979 and in 1980 $1,507, as well as 27,000 shares[5] of WREIT stock valued at $91,000. The special fees were carried on the Trust's books as commissions on the sale of various parcels of Trust property, allegedly because due to cash flow problems the additional cash necessary to pay the fees was only available when Trust assets were sold.

Subsequent to the Board's approval of the 1976 special fees payment, the Trust's auditors requested an opinion from the Trust's legal counsel as to whether the additional compensation paid to RPM as Property Manager "in connection with certain specific investment sales [was] in accordance with the provisions of the Declaration of Trust."[6] Counsel's opinion advised the Board that Section 4.5 of the Declaration of Trust did not apply to "the payment of additional compensation payable to the manager by direct action of the Board of Trustees," but rather was limited in application to "direct payment of commissions and other remunerations from third parties."[7] The annual contracts negotiated subsequent to counsel's legal opinion between the Trust and RPM designated RPM

alia, the rights and responsibilities of the trustees, officers and shareholders.

3. Weinstein formed RPM to act as Property Manager, rather than contracting with the Trust through Weinstein Associates, to avoid the risk of personally incurring liability for bills properly payable by WREIT, which the Trust might be unable to pay because of its then uncertain financial condition. From 1975 to 1977 the Board of Trustees performed the function of trust advisor.

4. In 1976, a special fee of $75,000 was paid to RPM, as "Property Manager," in recognition of the performance of a number of special services.

5. WREIT and RPM (as Manager and Advisor) entered into four one-year contracts. Although RPM was designated as both Property Manager and Trust Advisor in each of the four contracts (covering the 1977–1980 period), the first two contracts did not specify the amounts paid to RPM in each specific capacity.

6. Section 4.5 of the Declaration of Trust states: "If the Manager, or any Trustee or officer of the Trust, or any Person affiliated with the Manager or any such Trustee or officer shall

receive any commission or other remuneration in connection with the purchase or sale by the Trust of any of its investment assets, or in connection with the placement of servicing of any Mortgage Loans held by the Trust, the amount of such commission or other remuneration shall be deducted from and credited against the compensation payable to the Manager for its services in such capacity."
Other provisions of the Declaration of Trust make it clear that the term "Manager" refers to the Trust Advisor and not the Property Manager.

7. Counsel's opinion was solicited in reference to a situation wherein RPM only acted as Property Manager. Subsequent to July 1, 1977, an entirely different situation existed: George Weinstein was both President of the Trust and a trustee; and, RPM was both Property Manager and Trust Advisor. It is clear from a plain reading of Section 4.5 that such provision did not apply to George Weinstein until July 1, 1977 when RPM, his affiliate, became Trust Advisor.

as both Trust Advisor and Property Manager and made express provision for payment of commissions to RPM on the sale of trust assets.

In 1980, several dissatisfied shareholders of the Trust joined together to solicit proxies for the removal of the incumbent members of the WREIT Board and the election of a new slate of trustees. A proxy fight followed with both sides claiming that the other parties' solicitation of proxies failed to conform to the requirements of the Securities Exchange Act of 1934 ("SEA"), requiring full and truthful disclosure. The district court determined that the dissident shareholders' proxy materials conformed to the SEA requirements but found material omissions in the WREIT Board's proxy materials and, as a matter of equity, enjoined both groups from the voting of any proxies obtained prior to the court's decision.

Upon the completion of the 1980 proxy fight, the WREIT shareholders elected a new Board and the new trustees directed the Trust to seek recovery of the special fees and stock paid to RPM on behalf of the WREIT stockholders. With the district court's authorization, the Trust became the plaintiff in the proxy litigation and filed an amended complaint seeking recovery of the special fees paid to the defendants in connection with the sale or purchase of assets as well as the return of the 27,000 shares of stock issued in payment of such fees.

The Trust's amended complaint alleged that the defendants' conduct in procuring the special commission payments from the Trust constituted a breach of the defendants' fiduciary duty to the Trust as their payment was contrary to the express language of the Declaration of Trust (Section 4.5) which provided that "any commission ... shall be deducted from and credited against the compensation payable to the Manager for its services." After trial, the court dismissed WREIT's breach of fiduciary duty claim finding that Section 4.5 of the Declaration of Trust was ambiguous and the commissions paid to RPM were approved by the trustees in good faith. The district court reasoned that the trustees' reliance on their interpretation of Section 4.5 precluded any liability for *ultra vires* activities because Section 7.1 of the Declaration of Trust prohibits the imposition of any liability on trustees and officers for their good faith conduct in the performance of their duties.[8] Therefore, the trial court held that the defendants could not be held personally liable for a violation of the provisions of the Declaration of Trust.[9]

The plaintiff argues to this court that Section 4.5 of the Declaration of Trust is unambiguous in requiring the deduction of all special commissions paid to RPM in connection with the sale of trust properties from the compensation paid to RPM in its capacities as Trust Advisor and Property Manager. Further, the plaintiff contends that any other interpretation of the express language of Section 4.5 would read it out of the Declaration of Trust, contrary to the rule that courts must avoid a construction which renders portions of a contract or other document meaningless or mere surplusage. *Goebel v. First Fed. Savings & Loan Asso.*, 83 Wis.2d 668, 680, 266 N.W.2d 352, 358 (1978).

The defendants, on the other hand, contend that Section 4.5 is ambiguous because

---

**8.** Section 7.1 of the Declaration of Trust recites:

"No Trustee or officer of the Trust shall be liable to the Trust ... for any action taken by him in good faith in performing his duties as a Trustee or officer of the Trust except for his own willful misfeasance, bad faith, gross negligence or reckless disregard of duty."

**9.** The trial court also entered judgment for the defendants on several of their counterclaims, including one for the recovery of their reasonable attorneys' fees incurred while defending this action. The court held that:

"[J]udgment is entered in favor of George Weinstein, Stanley Weinstein, and Reit Property Managers, Ltd., against the Wisconsin Real Estate Investment Trust, awarding them their actual and reasonable expenses, including attorneys' fees, incurred in connection with the defense of this action."

The issue of the defendants' indemnification from payment of legal fees is not properly before this court on appeal. The matter of attorneys' fees is properly before the district court and should be considered in light of this court's decision herein.

it is reasonably subject to different interpretations as evidenced by the different interpretations offered by WREIT, the district court and the defendants. *See Foerster, Inc. v. Atlas Metal Parts Co.,* 105 Wis.2d 17, 22, 313 N.W.2d 60, 62 (1981). The defendants further contend that the interpretation of the previous trustees of their authority under Section 4.5, if made in good faith, is conclusive pursuant to Section 3.1 and the defendants are not subject to subsequent liability because of Section 7.1.[10]

The issue presented on appeal is: Must the defendants, or any of them individually, repay the special commissions paid to RPM in connection with the sale of WREIT assets during 1977–1980. In order to resolve this issue we must answer the following questions:

(A) Is the language of Section 4.5 of the Declaration of Trust clear and unambiguous?

(B) Can the defendant George Weinstein insulate himself from liability through the use of a "good faith" defense?

## II.

The construction of a written instrument presents a question of law and is therefore properly determinable by this court on appeal independent of the construction given the instrument by the trial court. *See Jansen Co. v. Milwaukee Area Dist. Board,* 105 Wis.2d 1, 312 N.W.2d 813 (1981); *Kraemer Bros. v. United States Fire Ins. Co.,* 89 Wis.2d 555, 278 N.W.2d 857 (1979). A proper reading of the pertinent portions of Section 4.5 is dispositive of this case.

"If the Manager, or any Trustee or officer of the Trust, or any Person affiliated with the Manager or any such Trustee or officer shall receive *any commission or other remuneration* in connection with the purchase or sale by the Trust of any of its investment assets ... the amount of such commission or other remuneration *shall be deducted from and credited against* the compensation payable to the Manager for its services in such capacity." (emphasis added).

Courts will construe words of a document in accordance with their usual, common and ordinary meaning. *See Murphy v. White Hen Pantry Co.,* 691 F.2d 350, 355 (7th Cir.1982). The plain meaning of the language used controls "even though the parties may have placed a different construction on it." *State ex rel. Siciliano v. Johnson,* 21 Wis.2d 482, 487, 124 N.W.2d 624, 626–27 (1963).[11] Contrary to the contention of the defendants and the finding of the trial court that Section 4.5 is ambiguous, we hold that the language of Section 4.5 is clear, specific and unambiguous and

---

**10.** Section 3.1 of the Declaration of Trust states:

"Power and Authority of Trustees. The Trustees, subject only to the specific limitations contained in this Declaration, shall have, without further or other authorization and free from any power or control on the part of the Shareholders, full, absolute and exclusive power, control and authority over the Trust Estate and over the business and affairs of the Trust to the same extent as if the Trustees were the sole owners thereof in their own right, and to do all such acts and things as in their sole judgment and discretion are necessary or incidental to, or desirable, for the carrying out of any of the purposes of the Trust or conducting the business of the Trust. *Any determination made in good faith by the Trustees of the purposes of the Trust or the existence of any power or authority hereunder shall be conclusive.* In construing the provisions of this Declaration, presumption shall be in favor of the grant of

powers and authority to the Trustees. The enumeration of any specific power or authority herein shall not be construed as limiting the general powers or authority or any other specified power or authority conferred herein upon the Trustees. (emphasis added).

**11.** The dissent cites *Zweck v. D.P. Way Corp.,* 70 Wis.2d 426, 435, 234 N.W.2d 921, 926 (1975), for the proposition that "a court normally should adopt the interpretation of the contract which the parties themselves had adopted." The dissent neglects to cite the complete sentence contained in *Zweck* from which the dissent's "rule" is taken. The parties' interpretation is only important "where contract terms may be taken in two senses." *Zweck,* 70 Wis.2d at 435, 234 N.W.2d at 926. Terms which are plain, clear and unambiguous cannot "be taken in two senses" and, hence, the dissent's reliance on *Zweck* is inapposite.

the only reasonable interpretation is that offered by the plaintiff: *any* commission (or other remuneration) received by the Trust Advisor in connection with the sale of Trust assets *shall* be deducted from the compensation to which the Trust Advisor is entitled for services performed in that capacity.

The trial court held that Section 4.5 is ambiguous because it can be read to prohibit all commissions or "only to prevent secret commissions." The trial court, with no valid legal basis, erroneously "read-in" the reference to secret commissions as the clear language of Section 4.5 does not contain any such distinction. "*Any* commission or other remuneration" falls within the scope of Section 4.5, not just "secret" commissions as assumed by the trial court.

We hold that the interpretation given by the district court of Section 4.5 is not supported by the plain meaning of the language used in that section and we reject the trial court's determination that Section 4.5 is ambiguous. We hold that George and Stanley Weinstein and RPM improperly failed to credit the commissions they received in connection with the purchase and sale of Trust assets against the compensation to which RPM was entitled as Trust Advisor from 1977 to 1980 as required by Section 4.5.

Further we hold that the language of Section 4.5 is not only clear and unambiguous, but is also mandatory, and therefore, absent explicit shareholder approval, the trustees were without authority to modify the requirement contained in Section 4.5 and, thus, the trustees' approval of the commissions paid to RPM failed to nullify the obligation to credit the commissions against the other compensation paid to RPM under contract as Trust Advisor. The Weinsteins, through RPM, were improperly "overcompensated" despite the actions of the WREIT Board because the power of the trustees to amend the Declaration is restricted, without shareholder approval, to limited situations wherein the trustees "deem it necessary to conform [the] Declaration to the requirements of the REIT Provisions of the Internal Revenue Code or to other applicable laws or regulations" by Section 8.3 of the Declaration.

### III.

 We find the defendant's "good faith" arguments unpersuasive and unfounded in view of the express limitation on the trustees' general powers contained in Section 3.1:

> "The Trustees, *subject only to the specific limitations contained in this Declaration,* shall have ... control over the business and affairs of the Trust.... Any determination made in good faith by the Trustees of the purposes of the Trust or the existence of any power or authority hereunder shall be conclusive." (emphasis added).

The general powers granted to the trustees are subject to "the specific limitations contained in this Declaration."

The clear, direct and unambiguous language of Section 4.5 specifically limits the powers of the trustees with respect to the payment of commissions (and other remuneration) to the Trust Advisor: "*Any* commission ... *shall* be deducted from ... the compensation payable" to the Trust Advisor for services performed in that capacity, *regardless* of whether or not such commissions were approved by the trustees. The specific limitation of Section 4.5, according to the express terms of Section 3.1, controls over the general grant of powers contained in Section 3.1, and the defendant's reliance upon Section 3.1 to immunize him from liability in this action is misplaced. *See Goldmann Trust v. Goldmann*, 26 Wis.2d 141, 148, 131 N.W.2d 902, 906 (1965).[12]

---

12. The dissent asserts that the defendants adequately established a good faith defense under Section 3.1 of the Declaration of Trust. While the majority would recognize a defense of good faith if there had been a *bona fide* ambiguity in the interpretation of Section 4.5 of the Declaration of Trust, no such ambiguity existed or was shown by the defendants. Since there was no ambiguity in Section 4.5 of the Declaration of Trust, there is no reason for failing to abide by that section's clear and specific requirements, and the defendants will not be allowed to claim

As previously noted, the Declaration of Trust dictates the powers, duties and responsibilities of the shareholders, officers and trustees of the Trust and, to that extent, is analogous to the by-laws of a corporation. The WREIT Declaration of Trust also expressly provides that the rights and responsibilities of the shareholders, trustees and officers should be determined in accordance with Wisconsin corporate law whenever appropriate.[13] *See* 16A W. Fletcher, Cyclopedia of the Law of Private Corporations § 8240 (rev. perm. ed. 1979).

Viewing the Declaration of Trust as the functional equivalent to the by-laws of a corporation, it is clear that in participating in the acceptance and authorization of the additional commissions paid to RPM, George Weinstein was acting in an *ultra vires* manner. Wisconsin law specifically recognizes that a suit can be filed against an officer or director by a corporation to recover damages sustained when that individual acts beyond their authorized authority. See Wis.Stat. § 180.06(2). We hold that Weinstein, while trustee, trust advisor and property manager, did accept the payment of the unauthorized commissions and thus the Trust may maintain this *ultra vires* suit against him. Further, we hold Weinstein certainly was acting outside the parameters of his legitimate scope of authority as an officer and trustee of the Trust when he, through RPM, was excessively compensated in direct contravention of Section 4.5 to the detriment of the shareholders of WREIT. We also hold that the shareholders of WREIT were injured in the amount of the additional compensation paid to RPM and George Weinstein is liable for repayment of the excessive commissions.

Weinstein's reliance on a good faith defense based upon the actions of the independent trustees is without merit as:

> good faith in failing to recognize that section's limitations.

**13.** Section 7.7 of the Declaration of Trust reads:

> "7.7 Limitation Upon Duties and Liabilities. To the extent that the nature of this Trust

"Good faith is a defense only where a trustee, acting within the limits of his powers with proper prudence and diligence, commits mere mistakes or errors of judgment, but it is not a defense where a trustee disregards the limits placed upon his power by law or by trust instrument."

3 W. Fletcher, Cyclopedia of the Law of Private Corporations § 1021 (rev. perm. ed. 1975). The action proposed by Weinstein as president and adopted by the trustees upon his recommendation was clearly not authorized by the Declaration of Trust (as Section 4.5 was mandatory, clear and unambiguous and expressly prohibited it) and the trustees by their own action, absent shareholder approval, cannot ratify action expressly contrary to, and in disregard of, the limitations upon their powers contained in the Declaration. The Declaration of Trust specifically designated the shareholders as the proper parties to amend the Declaration in all but a few situations.

■ Likewise, George Weinstein's defense based on reliance on the erroneous opinion of trust counsel is without merit. At all times relevant herein, Section 4.5 expressly and specifically mandated that any commissions received by the Trust Advisor in connection with the sale of Trust assets were required to be deducted from the Trust Advisor's basic compensation. Counsel rendered the "commission opinion" while RPM acted only as Property Manager, a situation that was not even addressed by Section 4.5. Reliance on advice of counsel is not a legitimate defense where the terms of the trust are plain and explicit. See 3 W. Fletcher, *supra,* § 1028.

### IV.

We hold that Section 4.5 is clear, direct, specific, unambiguous and mandatory and that the defendant George Weinstein, is

> (that is, a business trust) will permit, the duties and liabilities of Shareholders, Trustees and officers shall be no greater than those of the shareholders, directors and officers of a Wisconsin corporation."

liable for the repayment of commissions paid to his affiliate RPM, while that entity acted as Trust Advisor, in direct contravention of the express language of the Declaration of Trust. We reverse that portion of the district court's opinion sanctioning the payment of special commissions to RPM and we remand this action for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

BAUER, Circuit Judge, dissenting.

The overriding purpose of canons of contract construction is to ascertain and implement the intention of the parties. *North Gate Corp. v. National Food Stores, Inc.,* 30 Wis.2d 317, 323, 140 N.W.2d 744, 747 (1966).

When interpreting a contract, words unquestionably should be attributed their common and ordinary meanings. And when the contract provision is unambiguous, the plain meanings of words used control over the construction placed on them by the parties. When a contract provision is ambiguous, however, the plain meaning analysis is neither the exclusive nor the conclusive device for interpretation.[1] Instead, great weight is placed on the practical construction given to the contract by acts of the parties to it. *Martinson v. Brooks Equipment Leasing, Inc.,* 36 Wis.2d 209, 219, 152 N.W.2d 849, 854 (1967). Moreover, a court normally should adopt that interpretation of the contract which the parties themselves have adopted. *Zweck v. D P Way Corp.,* 70 Wis.2d 426, 435, 234 N.W.2d 921, 926 (1975).

A contract provision is ambiguous if it is "reasonably and fairly susceptible to more than one construction." *Jones v. Jenkins,* 88 Wis.2d 712, 722, 277 N.W.2d 815, 819 (1979). And when interpreting an ambiguous provision in a contract, the court may have to look beyond its language for a construction which gives a fair meaning to the provision. *Farley v. Salow,* 67 Wis.2d 393, 401, 227 N.W.2d 76, 81 (1975).

## I

I believe that Section 4.5 of the Declaration of Trust is reasonably and fairly susceptible to more than one construction. Section 4.5 states that "if the Manager ... shall receive any commission or other remuneration in connection with the purchase or sale by the Trust of any of its investment assets ..., the amount of such commission ... shall be deducted from ... the compensation payable to the Manager for its services in such capacity."[2] The district court declared Section 4.5 ambiguous. I agree. The simple approach employed by the majority—that is, ruling that "any" cannot be defined as "only secret"—is unsatisfactory. Simple phrases do not always have plain meanings. In fact, the issue is not the definition of "any," but rather whether this section was designed to encompass the "special fees" or "commissions" paid—and not challenged at the time—by the plaintiff to the defendants.

I construe Section 4.5 reasonably to mean either what the majority holds or what the defendants argued: that the section could not mean that the trust was forbidden from paying the trust advisor fees in addition to its compensation; it applies only to prevent the trust advisor from profiting from third parties at the expense of the trust. *See Wisconsin Bankers Ass'n, Inc. v. Mutual Savings & Loan Ass'n,* 96 Wis.2d 438, 450, 291 N.W.2d 869, 875 (1980) ("A statute, phrase, or word is ambiguous when capable of being interpreted by reasonably well-informed persons in either of two or more senses."); *see also Foerster, Inc. v. Atlas*

---

1. The majority implies that the "plain meaning" analysis applies in every instance, even to defeat the intention of parties to the contract when the contract is reasonably susceptible to differing constructions. *See In re Watertown Tractor & Equipment Co.,* 94 Wis.2d 622, 637, 289 N.W.2d 288, 295 (1980); *Patti v. Western Machine Co.,* 72 Wis.2d 348, 351, 241 N.W.2d 158, 160 (1976); *State ex rel. Siciliano v. John-*

son, 21 Wis.2d 482, 487, 124 N.W.2d 624, 626–27 (1963).

2. I note in passing that the majority recognizes that the term "Manager" in Section 4.5 doesn't mean "Manager" at all, but rather means "Trust Advisor."

*Metal Parts Co.,* 105 Wis.2d 17, 22, 313 N.W.2d 60, 62–63 (1981).[3]

Discovering the ambiguity is more difficult than properly interpreting the ambiguous provision. The plaintiff's former trustees, independent auditors, and general counsel all interpreted Section 4.5 as inapplicable to payments from the trustees. The general counsel opined that Section 4.5 "has no application with respect to the payment of additional compensation payable to the manager by direct action of the Board of Trustees." Such an interpretation of the contract does not render Section 4.5 surplusage, and is reasonable, fair, and just— not unusual or extraordinary. *Jones v. Jenkins,* 88 Wis.2d at 722, 277 N.W.2d at 819.

## II

The majority, in my opinion, also misinterprets Section 3.1 of the Declaration of Trust, which establishes a good faith defense for the trustees. The first sentence of that section states that the trustees "shall have ... full, absolute and exclusive power, control and authority ... over the business and affairs of the Trust," subject only to the "specific limitations contained in this Declaration." This sentence establishes control of the trust in the trustees, and states that the trustees cannot act beyond the powers expressed in the Declaration. The second sentence of Section 3.1 states, "Any determination made in good faith by the Trustees of ... the existence of any power or authority hereunder shall be conclusive."[4] The second sentence clearly is not directly modified by the phrase which begins the first sentence. Thus, Section 3.1

limits the trustees to the powers contained in the Declaration, but grants the trustees the authority to determine in good faith what those powers are by interpreting the trust provisions.[5] This is far different from the majority's characterization of Section 3.1. The trustees acted in good faith when determining the scope and application of Section 4.5; the defendants should not be liable to repay money they received from the trust.

## III

Because proper resolution of the above issues and the others raised by the plaintiff dictate affirmance of the district court ruling, I respectfully dissent.

---

**3.** The Wisconsin Supreme Court has deemed ambiguous provisions seemingly as concrete as the one before us. For example, in *Patti v. Western Machine Co.,* 72 Wis.2d 348, 241 N.W.2d 158 (1976), the plaintiff sued under a deferred compensation agreement which stated in part: "Upon termination of Employee's employment by Company, whether by reason of his death, disability or retirement, Employee or his designated beneficiary ... shall be entitled to receive from Company deferred compensation payments ...." The court ruled that the word "retirement" was patently ambiguous because "it may mean anything from voluntary, unilateral termination to involuntary, forced termination." *Id.* at 352, 241 N.W.2d at 160.

The court ruled that "retirement" in that agreement meant "voluntary termination of employment at age sixty-five or at an earlier age upon the consent of the employer corporation's Board of Directors." *Id.*

**4.** Section 3.1 also states that, in construing provisions of the trust, "presumption shall be in favor of the grant of powers and authority to the Trustees."

**5.** Other sections of the Declaration of Trust bolster this interpretation, especially Sections 7.8 and 7.9.